GEORGE W. PIERCE AND HARRIET E. MUNFORD, BY
WILLIAM H. TUCKER, THEIR NEXT FRIEND, v.
FRANCIS GRIMLEY AND JOSEPH BEITH.

*Ejectment—Trust-deed—Mortgage by construction— Trustee — Can
exercise powers granted only in behalf of beneficiary—Fore-
closure by advertisement—Must conform to statutes.*

1. The owner of 160 acres of land in Huron county, Michigan,
before his patent was issued, conveyed the land to one Beeson,
and to his heirs and assigns, describing him as trustee, and,
after reciting grantor's indebtedness upon a note, authorized
the trustee, in case it was not paid, on the application of the
payee, or bearer, to enter upon the land and as the attorney of
the grantor, or in his own name, to sell and dispose of the
land, in whole or in part, at public auction, for the best price
it would bring in cash, ten days' public notice having been
given of the time and place of such sale, by advertisement in
one of the public newspapers printed in the city of Detroit.
Provision was made for the payment of the note and expenses
of the proceedings, and for payment of the balance realized on
such sale to the grantor, his heirs, etc. The trustee was to
convey without personal covenants, so as to be a perpetual bar
in law and equity, and on payment of the note was to recon-
vey to the grantor, who was to pay taxes. The land was wild
and unoccupied until 1876, when the trustee conveyed 80 acres to
one Grimley, by full warranty deed, who went into possession
under it. In 1880 the grantee, purporting to act as trustee,
executed a deed to one Van Dyke of the 160 acres, reciting the
trust-deed and that he had caused the sheriff of Wayne county
to expose the land for sale at auction, who struck it off to
Van Dyke for a stated sum, as the highest bidder, and that,
as such trustee, he conveyed to Van Dyke the property which
the grantor had in the land at date of said trust-deed. The
deed to Van Dyke contained no recitals of the time or place of
sale, was not signed by the sheriff, and was absolute in form,
with no period of redemption. Van Dyke afterwards conveyed
to Grimley. An action of ejectment was brought by some of
the heirs of the grantor against Grimley, and, in reversing a
judgment in his favor, the Court hold.

    a—The instrument given to Jacob Beeson was a mortgage,
    17 MICH.—18

and its power of sale, which did not conform to our statutes, could not authorize the equity of redemption to be cut off by anything short of a sale in equity, or one in all respects conforming to the statutes. *Comstock v. Howard*, Walk. Ch. 111.

*b*—There is nothing in this mortgage repugnant to the foreclosure statute, except as *permissive*, and it would by its terms allow a proper advertisement in Huron county, with the additional advertisement in Wayne county, as no place of sale is made *imperative*.

*c*—When Grimley bought of Beeson, in 1876, this instrument was on record, and was Beeson's only source of title, if he had any. It only allowed him to enter, not merely on default, but on the demand of the owner of the note. It gave him no personal interest, and no power to convey without demand of the creditor to foreclose, and foreclosure. His warranty deed was *void*, as against said grantor and his heirs, and conveyed no legal title whatever.

*d*—The only color of title Grimley has was derived under Van Dyke's deed, whose title amounts to nothing. As a foreclosure, it is on its face imperfect, because it does not purport to be made under the statute. It therefore did not cut off the redemption, and, under our statutes, gave no right of entry. How. Stat. § 7847.

*e*—Beeson was not interested in his own right. No power was given to him to do any act under the mortgage except when requested by the owner of the note, which was outlawed in 1865, and there is no testimony indicating where it is, or that it exists at all. The attempted foreclosure in 1880 was more than 20 years after the note became due, and does not purport, and is not shown, to have been called for by the holder of the note, which by that lapse of time is beyond the presumable, if not the possible, faculty of aiding or justifying resort to the mortgage.

*f*—As Beeson never was a trustee to receive payment of the note, but only held title to the mortgage subject to the holder's order, a sale by him, not authorized by the creditor, could not pass the mortgage to Grimley, even if he held all the land mortgaged. But the mortgage sale of the 160 acres was made in one parcel, for one sum, and Grimley purchased only 80 acres. It would be impossible to hold him an assignee of the mortgage, had Beeson purported to act in accordance with the terms of the trust.

*g*—There is nothing in the defense which in any way interferes with plaintiffs' right to recover. What rights Grimley may have in the improvements are not involved in the present record.

2. The following general propositions are summarized from the opinion of Mr. Justice CAMPBELL:

*a*—Our statutes may, perhaps, authorize a power of sale in a mortgage, although in some respects variant, to be carried into effect by such notices and proceedings, and subject to such conditions, as are required by law.

*b*—The introduction of powers of sale into mortgages was, as is well known, a device to escape redemption; but in this country, from the beginning, the legislatures have stepped in, and so regulated the sales as to give them proper publicity, and usually made them subject to some reasonable redemption.

*c*—As in all other cases of remedy by act of the party, it has been held that every essential provision of law shall be complied with in executing a mortgage power of sale, and so appear. Parties may add to these conditions, but cannot dispense with them, and the case of a trust may add to, but it cannot take away from, them.

*d*—Where the trust appears on the face of a deed, it is notice to every one of the trustee's character and duties; and it is declared by statute that every deed in violation of such a trust shall be held absolutely void. How. Stat. § 5593.

*e*—Even under the old law a right of entry by a mortgagee must be exercised within 20 years. *Albright v. Cobb*, 34 Mich. 316.

*f*—A mortgagee's possession not obtained by license of the mortgagor is tortious, and he may be ejected. *Newton v. McKay*, 30 Mich. 380, and notes.

*g*—In ejectment, where the trial is by jury, no judgment against their verdict can be entered in the Supreme Court.

Error to Huron. (Beach, J.) Argued February 6 and 7, 1889. Decided November 8, 1889.

Ejectment. Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*Elbridge F. Bacon*, for appellants, contended:

1. It clearly appears from the instrument itself, that it was given as security for an alleged indebtedness, and this fact stamps it as a mortgage; citing *Enos v. Sutherland*, 11 Mich. 538; *Cowles v. Marble*, 37 Id. 158; *Cooper v. Brock*, 41 Id. 488; *Ferris v. Wilcox*, 51 Id. 105; *Jeffery v. Hursh*, 58 Id. 246; *Weed v. Mirick*, 62 Id. 414; *Hoile v. Bailey*, 58 Wis. 434; *Schriber v. LeClair*, 66 Id. 579.

2. The defeasance may be contained in the deed itself, or in a separate instrument, and may consist of a provision that upon payment the deed shall be void, or a provision that the estate shall be reconveyed upon the payment of the debt; citing 1 Jones, Mort. §§ 241, 242; 1 Hilliard, Mort. 39; nor does it change the character of the instrument as a mortgage that it is executed to a third party, in trust, to secure the payment of the debt; citing *Comstock v. Howard*, Walk. Ch. 110; *Bank v. Chappelle*, 40 Mich. 447; *Railway Co. v. Auditor General*, 41 Id. 635; *Cormerais v. Genella*, 22 Cal. 116; *Lawrence v. Loan & Trust Co.*, 13 N. Y. 200; *Union Co. v. Sprague*, 14 R. I. 452; *Austin v. Mfg. Co.*, Id. 464; *Chafee v. Bank*, 71 Me. 514; *DeWolf v. Mfg. Co.*, 49 Conn. 283; *Hoffman v. Mackall*, 5 Ohio St. 124; *Webb v. Hoselton*, 4 Neb. 308; *Turner v. Watkins*, 31 Ark. 429; 1 Jones, Mort. § 62.

3. The instrument being a mortgage, the legal title remained in Selph, and the conveyance from Beeson to Grimley conveyed no title whatever to the land, but, if it had any effect, it would only amount to an assignment of the mortgage, and would give the defendants no right to the possession of the premises in question; citing *Hazeltine v. Granger*, 44 Mich. 503; *Batty v. Snook*, 5 Id. 231; and such legal title could only be divested by a foreclosure and sale pursuant to the statute; citing Comp. Laws of 1857, § 5177; How. Stat. § 8497; *Lee v. Mason*, 10 Mich. 404; *Doyle v. Howard*, 16 Id. 264; *Hoffman v. Harrington*, 33 Id. 392; 2 Jones, Mort. §§ 1769, 1810, 1822, 1827; *Webb v. Haeffer*, 53 Md. 187; *Lawrence v. Loan & Trust Co.*, 13 N. Y. 200.

4. The requirements of the statute must be strictly followed, whatever may be the terms of the power, which may impose additional obligations, but cannot take away any of those required by the statute; citing 2 Jones, Mort. §§ 1822, 1827; *Lawrence v. Loan & Trust Co.*, 13 N. Y. 200; *Webb v. Haeffer*, 53 Md. 187.

*Atkinson, Vance & Wolcott*, for defendants, contended:

1. In support of the claim that the instrument executed by Selph is a deed and not a mortgage, counsel cite *Goddard v. Coe*, 55 Me. 358; *Wetherbee v. Green*, 22 Mich. 321; *Bennett v. Robinson*, 27 Id. 26; *Jeffery v. Hursh*, 42 Id. 563; and title has been held to pass under similar instruments; citing *Adams v. Stevens*, 49 Me. 362; *Bank v. Vose*, 23 Id. 98.

2. If the title passed to Beeson, trustee, the question of whether he sold rightfully or wrongfully cannot be inquired into in an action of ejectment, the remedy being in equity; citing *Dawson v. Hayden*, 67 Ill. 52; *Graham v. Anderson*, 42 Id. 518; *Railroad Co. v. Kennedy*, 70 Id. 366; *Goddard v. Coe*, 55 Me. 358.

3. When the mode or manner of sale is left in the discretion of the trustee, and there has been an honest exercise of that discretion, the sale may be voidable, but not void, and then only in proper proceedings for that purpose; citing 2 Jones, Mort. §§ 1778, 1907; *Ingle v. Culbertson*, 43 Iowa, 265, 273.

4. In support of the proposition that, Grimley's entry not being wrongful, and Selph having abandoned the land as a satisfaction of the debt, Grimley was entitled to notice to quit before ejectment would lie, counsel cited *Reading v. Waterman*, 46 Mich. 109; *Sinclair v. Larned*, 51 Id. 342; *Baldwin v. Cullen*, Id. 35.

CAMPBELL, J.   These infants bring ejectment for their portion, as heirs at law, of the estate of Harriet Pierce, their mother, who was daughter of the original patentee, George W. Selph.   George W. Selph, on October 10, 1859, obtained a patent from the United States of 160 acres of land, included in four 40-acre lots, where four sections met, no two being in the same section.   Two of these 40-acre parcels are claimed by defendant Grimley, and this action is brought for four-ninths of this property. George W. Selph died in 1866, and Harriet Pierce in 1871, being then about 26 years old.   Charles Selph, a brother of Harriet Pierce, and one of George W. Selph's heirs, died in 1881.   His age does not appear.   Plaintiffs inherited one-ninth from him.

The defendants set up claim from Jacob Beeson, and whatever claim of right they have depends on his action. On September 20, 1858, before the patent issued, George W. Selph executed an instrument which was a trust-mortgage to Jacob Beeson, trustee, and which plays a prominent part in the controversy.   It began with a recital that Selph was indebted on a note running to Strother M. Beeson or bearer, for $164.50, payable one year after date, at the Michigan Insurance Company Bank, Detroit, with interest after maturity, if unpaid, at 10 per cent.   Thereupon it conveys to Jacob Beeson, as

trustee, and to his heirs and assigns, the 160 acres referred to.—

"In trust, in case default shall be made by the said George W. Selph, his heirs, executors, or administrators, to pay the said promissory note to said Strother M. Beeson, or the bearer or holder thereof, or his or her executors, administrators, or assigns, according to its tenor and effect; then and in that case, on the application of the said Strother M. Beeson, or the bearer of said note, her or his legal representatives or assigns, it shall and may be lawful for the said party of the second part, or his personal representatives, to enter into and upon all and singular the premises, * * * and, as the attorney of the said party of the first part, for such purposes duly constituted, irrevocably, or in the name of said party of the second part, his executors or administrators, or in such other manner as the said party of the second part, or his legal representatives, shall judge best, to sell and dispose of the same, or any part or portion thereof, and all right, benefit, and equity of redemption of said party of the first part, his or her heirs and assigns, therein, at public auction, at such time and place as the party of the second part, or his legal representatives, may deem proper, and to adjourn said sale from time to time, as said party of the second part, or his legal representatives, may think proper, for the highest and best price the same will bring in cash; ten days' public notice having been previously given of the time and place of such sale, by advertisement in one of the public newspapers printed in the city of Detroit," etc.

The remainder of the mortgage provides for payment, from the proceeds, of the Strother M. Beeson note to him or the bearer, with expenses of proceedings, and the balance to go to the grantor, his heirs, etc., and to convey without personal covenants, so as to be "a perpetual bar in law and equity." But, on payment of the note, etc., to reconvey, etc. The grantor was to keep taxes paid.

There was no testimony or stipulation as to what became of this note, or who owned it.

It was conceded of record—

"That the land in question in this case was wild and unoccupied until August 30, 1876, when the defendants went into possession."

The taxes appear to have been assessed as non-resident, and paid up to that time by Jacob Beeson, except two years.

On August 30, 1876, Jacob Beeson, in his individual capacity, gave a full warranty deed to Grimley, who obtained his possession under it. On February 9, 1880, a deed was made by Jacob Beeson, purporting to act as trustee, to Philip J. D. Van Dyke, reciting the trust-deed and setting forth that he had caused the sheriff of Wayne county to expose the property for sale at auction, who struck off the land covered by the mortgage, amounting to 160 acres, to Van Dyke, for the sum of $547.84, as the highest bidder; and that he, as trustee, in pursuance of the sale, thereby conveyed to Van Dyke the property which George W. Selph had therein on September 20, 1858. This deed contains no recitals of the time or place of sale, and is not signed by the sheriff, and is absolute in form, with no period of redemption. Van Dyke conveyed to Grimley. Some affidavits were produced from the deputy-sheriff and the printer of the notice of sale, objection to which was made in connection with the whole attempted foreclosure, as not making out a valid sale.

This completed defendants' show of right against plaintiffs, and the court below held that there was no question for the jury, and that for various reasons named Grimley had a good, legal title, as against plaintiffs.

The instrument given to Jacob Beeson was a mortgage, and not an absolute conveyance; and its power of sale, which did not conform to our statutes, could not authorize the equity of redemption to be cut off by anything short of a sale in equity, or one in all respects conform-

ing to the statutes. *Comstock v. Howard,* Walk. Ch. 111. Our statutes may, perhaps, authorize a power of sale, although in some respects variant, to be carried into effect by such notices and proceedings, and subject to such conditions, as are required by law. There is nothing in this mortgage repugnant to the foreclosure statute, except as permissive, and it would by its terms allow a proper advertisement in Huron county, with the additional advertisement in Wayne county, as no place of sale is made imperative. The introduction of powers of sale into mortgages was, as is well known, a device to escape redemption; but in this country, from the beginning, the legislatures have stepped in, and so regulated the sales as to give them proper publicity, and usually made them subject to some reasonable redemption. As in all other cases of remedy by act of the party, it has been held that every essential provision of law shall be complied with, and so appear. Parties may add to these conditions, but cannot dispense with them.

The case of a trust may add to, but it cannot take away from, these conditions. Where the trust appears on the face of a deed, it is notice to every one of the trustee's character and duties; and it is declared by statute that every deed in violation of such a trust shall be held absolutely void. How. Stat. § 5583.

When Grimley bought of Jacob Beeson, in 1876, this instrument was on record, and was Beeson's only source of title, if he had any. That only allowed him to enter, not merely on default, but on the demand of the owner of the note. It gave him no personal interest, and no power to convey without demand of the creditor to foreclose, and foreclosure. His warranty deed was void, as against Selph and his heirs, and conveyed no legal estate whatever. While it might operate by way of estoppel against any future-acquired title of Jacob Beeson, it

passed no present title, because he had none to pass. This would be true, whether it is regarded as a deed or as a mortgage. Jacob Beeson never acquired any title afterwards. The only show of title Grimley has was derived under Van Dyke's deed. While he was, no doubt, honestly supposing he had a title, it was only through ignorance of the record, or mistake concerning its legal effect.

The Van Dyke title amounts to nothing. As a fore-closure, it is on its face imperfect, because it does not purport to be made under the statute. It therefore did not cut off the redemption, and, under our statutes, gave no right of entry. How. Stat. § 7847. Even under the old law a right of entry by a mortgagee must be exercised within 20 years. *Albright v. Cobb,* 34 Mich. 316.

A mortgagee's possession not obtained by license of the mortgagor is tortious and he may be ejected. *Newton v. McKay,* 30 Mich. 380, and notes to annotated ed. And in this case the admitted facts show that no possession was ever had until Grimley's entry in 1876, and there is nothing whatever to show a license to him or Beeson. Mere absence or talk to third persons about abandonment cannot amount to a license to any one to enter, and if there were any evidence here of such dealings between Selph and Beeson as would create a license, which I think cannot be found, it would have been for the jury and not for the court.

Jacob Beeson was not, so far as this record shows, interested in his own right. No power was given to him to do any act under the mortgage except when requested by the owner of the note. That note was outlawed in 1865, and there is no testimony indicating where it is or that it exists at all. The attempted foreclosure in 1880 was more than 20 years after the note became due, and does not purport, and is not shown, to have been

called for by the holder of the note, which by the lapse of 20 years is beyond the presumable, if not beyond the possible, faculty of aiding or justifying resort to the mortgage.

As Jacob Beeson never was a trustee to receive payment of the note, but only held title to the mortgage subject to the holder's order, a sale by him, not authorized by the creditor, could not pass the mortgage to Grimley, even if he held all the land mortgaged. But the mortgage sale of the 160 acres was made in one parcel, for one sum, and Grimley purchased only 80 acres. It would be impossible to hold him an assignee of the mortgage, had Beeson purported to act in accordance with the terms of the trust. There is nothing in the defense which in any way interferes with plaintiffs' right to recover. What rights Grimley may have in the improvements are not involved in the present record. As the trial was by jury, no judgment against their verdict can be entered here.

The judgment should be reversed, with costs, and a new trial granted.

CHAMPLIN, MORSE, and LONG, JJ., concurred with CAMPBELL, J.

SHERWOOD, C. J., *(dissenting)*. Plaintiffs bring ejectment to recover an undivided four-ninths of 80 acres of land, situate in the town of Sherman, in the county of Huron. The plaintiffs are infant heirs, and the suit is brought by their next friend. The defendants pleaded the general issue, with notice of the statute of limitations, and filed a claim for improvements. The plaintiffs then requested a finding as to what would have been the value of the land if no improvements had been made. The cause was tried in the Huron circuit, before a jury, and the learned circuit judge, after the testimony had all been given, directed a verdict for the defendants. The plaintiffs bring error.

From the record it appears that George W. Selph located the lands September 20, 1858, and received his deed for the same October 10, 1859. That Selph died in 1866, leaving three children, Charles Selph, Mary McLean, and Harriet Pierce, and his widow, Nancy Selph, his only heirs at law; that Harriet Pierce was the mother of the plaintiffs; that she died in 1871, leaving her son George and Harriet E. Munford her only heirs at law; that Charles Selph died in 1881, leaving his mother, Nancy Mary McLean, and the plaintiffs his only heirs at law; that the plaintiff Mrs. Harriet E. Munford is now 18, and George W. Pierce is 20, years of age.

It further appears in testimony that the value of the land, if no improvements had been made, would have been $800, and that the improvements increase the present value of the land $3,000; that the land was wild, and unoccupied by any one, until August, 1876, when the defendants went into possession, and have ever since been in possession, claiming title thereto.

From the record it further appears that on September 20, 1858, George W. Selph executed to S. M. Beeson a promissory note for the sum of $164.50, payable one year from date, with 10 per cent. interest; and on the same date made and executed to Jacob Beeson a certain instrument, whereby he conveyed the lands in question, with others, in trust, upon condition that upon payment of the amount of the note and interest in one year said Jacob Beeson would reconvey the lands to George W. Selph, or to his assigns, and, if default was made in such payment to the said S. M. Beeson of the said note, or to his assigns, or bearer of the note, it should then be lawful for the said Jacob Beeson, or his personal representatives, to enter upon said lands, and, as agent of George W. Selph, and in his name, or the name of his assigns, sell said lands, or any part thereof, and all right to redeem

the land of the said Selph, or his assigns, at public auction, at such time and place as said Jacob Beeson, or his assigns, might deem proper, and adjourn the sale from time to time as he might desire, on giving ten days' notice of such sale, by advertisement in one of the newspapers in Detroit; and out of the proceeds of the sale, after paying all the costs and expenses thereof, and all other expenses of the trust, he should first pay said S. M. Beeson, or the bearer of said note, the amount due on the same; and, second, pay to said George W. Selph, or to his representatives or assigns, such surplus, if any, as should remain.

And it is further declared by such instrument that no duty should rest upon the purchaser at such sale to see that the proper application of the proceeds thereof should be made; and the said Jacob Beeson, or his legal representatives, in the name of the said George W. Selph, or his legal representatives, was authorized to make and deliver deeds of the lands sold to the purchaser, without personal covenants; and such sale, it was agreed, should be a bar in law and equity against said George W. Selph, his heirs and assigns, and all persons thereafter claiming under him or them. The following is a copy of said instrument:

"This indenture, made the twentieth day of September, eighteen hundred and fifty-eight, between George W. Selph, of Huron county, Michigan, of the first part, and Jacob Beeson, trustee, of Detroit, party of the second part, witnesseth:

"That whereas, the said George W. Selph is justly indebted in the sum of one hundred and sixty-four 50-100 dollars, secured further by a promissory note of the said George W. Selph, dated September 20, 1858, for the sum of one hundred and sixty-four 50-100 dollars, payable to Strother M. Beeson, or bearer, one year from the date hereof, at the banking office of the Michigan Insurance Company, Detroit, with interest at the rate of ten per

cent. per annum after maturity, if said note should not be promptly paid when due.

"Now, therefore, these presents witnesseth: That the said party of the first part, in order to secure the prompt and punctual payment of the said promissory note above mentioned, according to its tenor and effect, and in consideration of the sum of one dollar in hand paid by the said party of the second part to the said party of the first part, the receipt whereof is hereby acknowledged, have and do by these presents grant, bargain, and sell unto the said party of the second part, his heirs and assigns, forever, all that certain piece or parcel of land situate, lying, and being in the county of Huron, State of Michigan, and described as follows, to wit: The south-west quarter of south-west quarter of section twenty-three, and south-east quarter of south-east quarter of section twenty-two, and the north-west quarter of north-west quarter of section twenty-six, and north-east quarter of north-east quarter of section twenty-seven, of township fifteen north, of range fifteen east, containing one hundred and sixty acres.

"To have and to hold the said premises, as described, with the hereditaments, tenements, and appurtenances thereunto belonging, to the said party of the second part, his heirs and assigns, forever, in trust, nevertheless, to wit:

"In trust, in case default shall be made by the said George W. Selph, his heirs, executors, or administrators, to pay the said promissory note to said Strother M. Beeson, or the bearer or holder thereof, or his or her executors, administrators, or assigns, according to its tenor and effect, then, and in that case, on the application of the said Strother M. Beeson, or the bearer of said note, her or his legal representatives or assigns, it shall and may be lawful for the said party of the second part, or his personal representatives, to enter into and upon all and singular the premises hereby granted or intended to be, and as the attorney of the said party of the first part for such purposes duly constituted, irrevocably, or in the name of said party of the second part, his executors or administrators, or in such other manner as the said party of the second part, or his legal representatives, shall judge best, to sell and dispose of the same, or any part or portion thereof, and all right, benefit, and equity of redemption of said party of the first part, his or her

heirs and assigns, therein, at public auction, at such time and place as the party of the second part, or his legal representatives, may deem proper, and to adjourn said sale from time to time, as said party of the second part, or his legal representatives may think proper, for the highest and best price the same will bring in cash; ten days' public notice having been previously given of the time and place of such sale by advertisement in one of the public newspapers printed in the city of Detroit, in the county of Wayne and State of Michigan, and out of the proceeds and avails of such sale, and the purchase money paid thereon, after paying all costs of advertising and sale thereof, and making all proper conveyances to the purchaser or purchasers at such sale, as aforesaid, and all other expenses of this trust, shall pay unto the said Strother M. Beeson, or the bearer of said note, he or his executors, administrators, or assigns, all such sum or sums of money as shall be due upon said above described promissory note, or on account thereof; and rendering the surplus, if any there be, unto the said George W. Selph, his heirs, executors, administrators, or assigns; and in every such case it is hereby declared by the said party of the first part that no duty or liability shall rest on the purchaser or purchasers at such sale to see to, or be responsible for, the application of the purchase money.

"And the said party of the second part, or his legal representative, as attorney for the said party of the first part, for such purpose by these presents duly constituted, irrevocably, or in the name of the said party of the second part, or his legal representatives, or in such other manner or form as may be legal and proper, shall make and deliver to the purchaser or purchasers at such sale a good and sufficient deed or deeds of conveyance for the same in the law, without personal covenants, which sale, so to be made, shall be a perpetual bar in law and equity against said party of the first part, his·or their heirs and assigns, and all persons claiming or to claim the same by, through, or under them, or either of them.

"And upon the further trust that, after and upon full payment of consideration of said promissory note, the fee of the recorder, the expenses of this trust, and after and upon receiving satisfactory notice from the said Strother M. Beeson, or the bearer of said note, her or his executors, administrators, and assigns, the said party of the

second part shall convey back to the said party of the first part, his or their heirs and assigns, the above-described premises, or such part thereof as shall remain unsold, after the full satisfaction and discharge of the trust herein first above mentioned, and the expenses thereof.

"And the said George W. Selph, the party of the first part, for himself and his heirs, executors, administrators, doth covenant and agree to and with the said party of the second part, his heirs, executors, and assigns, that at the time of the ensealing and delivery hereof he is well seised of the premises above conveyed, as of a good, sure, perfect, absolute, and indefeasible estate of inheritance in the law, in fee-simple, and has good right, full power, and lawful authority to grant, bargain, sell, and convey the same, in manner and form aforesaid, and that the same are free and clear of all incumbrances of what kind and nature soever, and the above-bargained premises, in the quiet and peaceable possession of the said party of the second part, his heirs, executors, administrators, and assigns, against all and every person claiming or to claim the whole, or any part thereof, will forever warrant and defend; and, furthermore, that George W. Selph, the said party of the first part, his heirs and legal representatives, shall and will pay, or cause to be paid, all and every tax and assessment, and assessments ordinary and extraordinary, that have been already, or that may be hereafter, levied and assessed upon said premises, until the sum or sums of money hereby secured by this deed, and the expenses of this trust, shall be fully paid, or the said premises be sold under and by virtue hereof; and, in case of any proceedings to sell said premises under this trust-deed, twenty dollars shall be allowed to said party of the second part by the said party of the first part, in full for his personal services in the premises.

"In witness whereof, the said party of the first part has hereunto set his hand and seal, the day and year first above written.

"GEORGE W. SELPH. [L. s.]
"JACOB BEESON, Trustee. [L. s.]
"Signed, sealed, and delivered in presence of
"T. H. HARTWELL,
"ELISHA TAYLOR."

It further appears that on August 30, 1876, Jacob

Beeson conveyed the lands in question by warranty deed to the defendant Francis Grimley, and on the same day, and in the same manner, conveyed the rest of the lands covered by the instrument above mentioned to Thomas Clark; that on February 9, 1880, Jacob Beeson, in pursuance of a foreclosure of the instrument given by Selph to him, above mentioned, executed a deed to Philip J. D. VanDyke, conveying all the lands described in that instrument, under sale of the same made at Detroit, after advertisement as provided in the trust-deed; and that on the next day said Van Dyke quitclaimed the lands to said Grimley described in the deed from Beeson to himself. At the time of the commencement of this suit the defendants claimed title to the lands in question, under the foregoing conveyances.

The trust-deed gave the right of possession to Jacob Beeson, on default of payment of Selph's note.

Eight errors are assigned for reversal upon the record, and all were relied upon in the argument of plaintiff's' counsel. Only those bearing upon the direction of the verdict need be considered.

The defendants, in putting in their testimony, offered in evidence the deed from Jacob Beeson to Van Dyke. This was objected to, for the following reasons:

1. The mortgagee named in the mortgage had conveyed away all his interest in the mortgage prior to the commencement of the foreclosure proceedings.

2. The mortgage contained no valid power of sale, by virtue of which the mortgage could be foreclosed by advertisement.

3. The notice of sale was not published in Huron county, where the land was situated, as required by law.

4. The notice of sale does not give the name of the assignee of said mortgage.

5. The notice of sale was not published 12 weeks, as required by law.

6. The land was not sold in the county of Huron,

where it was situated, as required by law, but in the county of Wayne.

7. It does not appear that the foreclosure was made on the application of Strother M. Beeson, or any other person entitled to have said mortgage foreclosed.

8. The debt for which said mortgage was given was barred by the statute of limitations.

9. At the time said foreclosure proceedings were commenced, the mortgage was barred by the statute of limitations.

10. The sale was not made by the proper person.

11. The deed on the foreclosure of the mortgage was not executed by the person making the sale, as required by law.

12. The land, although composed of four distinct tracts, was sold upon one bid, and for one sum.

The objection was overruled by the court, and the plaintiffs excepted to the ruling. The trust-deed to Beeson had already been placed before the jury; and this objection and exception makes the proper construction of that instrument necessary.

Defendant Grimley, when upon the stand as a witness, was asked when he first learned of the claimed defect in his title to the land in question; and, under objection by plaintiffs, was allowed to answer. There was no error in this ruling.

It appears from a statement contained in the charge that after the testimony was closed it was conceded by counsel for both parties that there was no question of fact for the jury to pass upon in the case; therefore neither party could claim error on the part of the court for directing the verdict of the jury, whatever errors might be insisted upon in the directions given.

The facts being uncontroverted, the questions of law arising therefrom, as given in this charge of the court in directing the verdict, are in effect so many findings; and I can see no good reason why they may not be so

regarded. The following is the charge of the court, given at the time he directed the verdict for the defendants:

"In this cause, both counsel have said to me that they conceive that there is no question of fact for the jury to pass upon, and I will say, also, that I am of that opinion, —that there is no question of fact for the jury in this case. I am of the opinion that the conveyance from George W. Selph to Jacob Beeson, trustee, is a mortgage, and the proceedings to foreclose the same, under the power of sale therein, were so defective as to be of no avail as a foreclosure; but it·appears from the uncontradicted testimony that Selph abandoned his claim upon the land as far back as 1860. The transaction between Beeson and Selph is clouded by the lapse of time; and it would be drawing no very violent inference from the few facts in the case to hold that Beeson treated the instrument in question as a deed, and Selph's abandonment of the land as satisfaction of his debt.

"If that inference can be fairly drawn, from the meager facts in evidence,—and I am of the opinion that it can be,—it would follow, from Beeson's conveyance to Grimley, that Grimley's entry upon the land was not a wrongful entry, and that Grimley was entitled to notice before ejectment was brought.

"It may, perhaps, also follow from this long, undisturbed holding by Grimley and assumed control by Beeson, that, if this instrument is a mortgage, the remedy in ejectment is not proper. The adjustment in this suit of the claim for improvements, if the plaintiffs should recover, would not give the defendants pay for the mortgage claim which was acquired by the conveyance from Beeson. If this instrument is a legal or equitable mortgage, ejectment is not the remedy, under the facts developed in this case.

"If the instrument is to be construed as a trust-deed, the plaintiffs have no remedy, as the terms of the power of sale seem to have been fairly complied with in such sale by Beeson, and it inures to Grimley's benefit.

"You are therefore directed to find a verdict for the defendants in this case."

Defendant Grimley was sworn as a witness in his own

behalf, and testified that he bought 80 acres of the farm in July, 1876; that he was not acquainted with the situation of the title at the time; that he paid $400 for it,— gave $200 down, and a mortgage on another piece of land for the other $200, and paid it; that the mortgage was due in a year; that he went into possession of the land the same fall, and has since cleared the land all up, and put buildings and fences upon it; that it is all cleared and well improved, except five acres; and that he has paid the taxes upon it ever since he bought it; that the defendant Joseph Beith is his tenant upon the farm; that he went in the neighborhood of the land in 1870; that Charles Selph was in the neighborhood when he first went there; that the land was entirely unimproved when he bought it; that he saw Charles frequently, and was acquainted with him until he died, in 1881; that Selph lived about three or four miles from the farm; that Charles never said anything to defendant about the land, or the title; that he knew defendant Grimley was living upon the land, and claimed title to it; that he frequently saw Charles Selph, and talked with him about the land, —saw him most every week.

The testimony offered by the defendants, and which is uncontradicted, as well as that on the part of the plaintiffs, is to the effect that when George W. Selph located the land in question it was with a view of obtaining the benefit of the homestead law; that he built some sort of a shanty upon it, and made a few shingles upon it; then left it and went to White Rock, and, abandoning such intention, went to S. M. Beeson, and obtained the money of him to enter the land in question, and, to secure the money thus obtained, subsequently gave the conveyance referred to, to Jacob Beeson; that, after receiving the patent for the land, George W. Selph never gave any more attention to it, but left it, and went away,

and homesteaded another piece of land, saying several
times, and on different occasions, and to different persons,
that he could not pay for the land, and had given it up;
and said he did not consider he had any claim on it
whatever; gave it up because he could not pay for it.

George never laid any claim to it after Grimley bought
it, nor did either of his children or grandchildren, for a
period of over 27 years, when this suit was commenced
by the plaintiffs, without ever having made a demand for
the possession.

It further appears that, after George W. Selph made
default in the payment of his note, Jacob Beeson paid
the taxes upon, and, with the consent of Selph, took such
possession of the land, and control thereof, as any per-
son could, owning the same, where the land was wild and
unimproved. Besides paying the taxes, he asserted his
title, and the right of possession which his trust-deed
gave him; offered the land for sale; and, believing that
said deed conveyed to him the land, and transferred to
him the title thereto, as well as the right of possession,
sold and conveyed, by full covenant warranty deeds, all
the lands mentioned in Selph's conveyance to him; and
all these things were done with the apparent knowledge
of Selph, and with his consent; and it was under such
warranty deed, thus obtained, that defendant Grimley made
his purchase of the land in question; took possession of
the same; cleared the land; brought it under a high state
of cultivation; erected thereon a valuable set of all kinds
of farm buildings,—thereby making it a pleasant and
desirable home. This was all done with the full knowl-
edge of the plaintiffs and their ancestors, through whom
they claim, and who, during all the time the dealings
were had and these things were done, lived in close prox-
imity to the land, and who never made a protest, or

pretended that they had or claimed any interest in the farm.

Neither is it pretended by any one of the descendants of George W. Selph that Jacob Beeson and these defendants have not acted in all these transactions in the utmost good faith, and, so far as George W. Selph is concerned, with his expressed wish and desire, both by parol and in writing; and the question now is, under all these circumstances, should this trust-deed, or mortgage, or by whatever name we may call it, be so construed as to defeat the understandings and unquestionable intentions of these several parties, whose interests have been involved so many years, and under whose action, if not altogether regular, the rights and equities of the defendants in this property have grown up and matured by the consent of plaintiffs, and those they represent? Shall all the understandings and agreements be construed to mean just what the parties, and their heirs and assigns, intended they should mean, for more than thirty years after they were had and made, and which have secured perfectly, and to the satisfaction of all the parties interested, the objects intended when they were had and made, or shall the holding of this Court (because in some similar case, arising in this or some other court, though not entirely upon the same state of facts, it has been held otherwise, and without serious consequences flowing from the decision) be such as will not only destroy the intention of such agreement and understanding of the parties to them, and all the rights and interests arising thereunder, and work absolute and irreparable injury to the defendants, in their old age? I do not think any such result is necessary; nor does the law require any such sacrifice to be made, when properly administered.

The law, when adjudicated, becomes of very great importance in our system of jurisprudence. Its stability

rests largely upon the observance of such precedents, and, when they are controlling, the rights and equities of the parties must be preserved; and in any case where in their application this cannot be done they cease to become precedents governing that particular case, and their controlling power may well be doubted.

Each of the parties in this case have sought to fortify their positions by precedent authorities in this Court.

It is the contention of the plaintiffs' counsel that the conveyance from Selph to Beeson is a mortgage, and nothing more; that the legal title to the land described therein remained in Selph, and that the conveyance from Beeson to Grimley conveyed no title to the latter, and, if it had any effect at all, it could only operate as an assignment of the mortgage to Beeson, and would give to him no right to the possession, and therefore Beeson could convey no such right to Grimley; that, under said conveyance to Beeson by Selph, the title of the latter and his heirs could only be divested by a proper foreclosure of the mortgage, either by advertisement under the statute, or by foreclosure in equity; that the statute in this matter must be followed, whatever may be the terms of the power; that, while the power given in the instrument may impose additional obligations, it cannot vary, or modify, or take away those given by statute; and five decisions of this Court, viz., *Batty v. Snook,* 5 Mich. 231; *Lee v. Mason,* 10 Id. 403; *Doyle v. Howard,* 16 Id. 264; *Hoffman v. Harrington,* 33 Id. 392; *Hazeltine v. Granger,* 44 Id. 503 (7 N. W. Rep. 74), are cited to sustain these views, besides several others, from different states.

On the other hand, it is claimed by counsel for defendants that the instrument under consideration is something more than a mortgage; that it has every element of a deed; that—

"It conveys and warrants an absolute title in fee-sim-

ple to Beeson, as trustee, his heirs, executors, adminis-
trators, and assigns. It warrants the quiet and peaceable
possession of the land in Jacob Beeson, trustee, his heirs,
executors, administrators, and assigns. It provides that
the conveyance is in trust to secure the payment of his
note to Strother M. Beeson. It appoints Jacob Beeson,
grantee, his attorney irrevocably, to sell and
convey the premises for that purpose, and directs the
manner of advertisement, but leaves in the possession of
the trustee all other matters pertaining to the sale. It
provides that the sale thus made 'shall be a perpetual
bar, in law and equity, against said party of the first part,
his or their heirs and assigns, and all other persons claim-
ing, or to claim, the same by, through, or under them,
or either of them.' It provides that the surplus, if any,
arising from such sale shall be paid to the grantor, George
W. Selph. It also provides that, if any of the land is
left after the note is paid, it should be conveyed back to
him. It does not contain the ordinary defeasance clause
found in mortgages."

And, while the defeasance clause is not conclusive, they
submit it affords proper matter for consideration in the
construction of the instrument, which they affirm was
sufficient to pass the title to the land to Jacob Beeson,
as trustee; and that the manifest intention of the parties
was to constitute a fund, or means of ready payment,
from which to satisfy the note given to S. M. Beeson, if
it was not paid at maturity, or to place such fund or
means beyond the control of either party; that the fact
that the instrument provides for a reconveyance of the
land left, after paying the note and completing the trust,
tends strongly to show that, as they understood and
intended the effect of the same, a reconveyance would be
necessary to re-invest Selph with the title, and, with this
understanding by Selph, he abandoned it as a homestead,
and took up other lands upon which to make his home;
that not only did the instrument pass the title to Jacob
Beeson, but it was intended it should by the parties.
Such is the contention of the defendants.

This Court held, in *Wetherbee v. Green*, 22 Mich. 321, that,—

"When a deed absolute is given to secure a debt, the purpose generally is to vest in the grantee a larger power of control and disposition than he would have by statute under an ordinary mortgage; and we are not prepared to say that the statute (Comp. Laws, § 4614) which forbids ejectment by mortgagees before foreclosure was intended to reach a case of that description."

The same question was to some extent considered in *Bennett v. Robinson*, 27 Mich. 26. In that case, December 23, 1867, Bennett conveyed to Nichols a piece of land by warranty deed, which was recorded February 1, 1868. September 28, 1869, Bennett and Nichols entered into a written agreement, by which Nichols agreed to reconvey the land to Bennett at any time within three years, on Bennett's paying his indebtedness to Nichols and one Wheeler. This agreement was not acknowledged or recorded. May 21, 1870, Nichols quitclaimed to Robinson, Robinson having no notice of the agreement to reconvey. Robinson gave notice to quit, and brought summary proceedings to recover possession. This Court said:

"There is not enough in the evidence to show that, as between the parties themselves, the deed was reduced or amounted to a mortgage only, until after the execution of the agreement. Whether, when it was executed, it had the effect to make the whole transaction a mortgage only, or was more properly a contract for a resale, we need not determine, since, if the transactions, taken together, then amounted to a mortgage, so far as related to the right of redemption and the necessity of foreclosure to make an absolute title, yet it was not an ordinary mortgage, leaving the right of possession in the mortgagor, but one which placed the right of possession in the grantee or mortgagee.   *   *   *   The conveyance made by Nichols to the complainant operated at least as an assignment of this mortgage, if it were only such, and a transfer of the right of possession before vested in Nichols."

So, in the present case, I think the instrument cannot be regarded as an ordinary mortgage only. It, by ·express terms, places the possession and right of possession in Jacob Beeson. It also conveys to him, with warranty, the title to the property in trust, to be sold by him for the purpose of paying a note, and then provides for a reconveyance of the title to such portions of the land as it was not necessary to sell to raise money to pay the note; and afterwards Beeson took all the possession he could take of the land, so long as it remained wild and unimproved. He assumed control of it, and paid the taxes upon it, and asserted his ownership.

It was formerly held, before our present statutes upon this subject, that the mortgagee was owner of the land mortgaged, and entitled to possession until his estate was defeated by redemption under the defeasance; that the mortgagor could not bring ejectment, but must resort to his bill in equity to redeem, in order to regain the title to his property, and, in a case like the present, where a party conveys his property to another by deed, with covenants of warranty, containing all the elements necessary to pass the title in fee absolute to the grantee, although it includes a defeasance by which, upon the payment of a sum of money, the grantor shall become entitled to a reconveyance of the whole, or any part thereof, I think it should be held the title will pass to the grantee, notwithstanding the instrument is in the nature of a mortgage; and, in such case, when the defeasance includes a provision giving the possession, and right of possession, to the grantee, and makes him a trustee, and authorizes him to sell so much of the land as may be necessary to satisfy the debt, and if, in pursuance of such trust, he makes sale thereof, and pays the debt, the purchaser at such sale, if valid, will take the title to the property, freed from any equity of redemption created by the

defeasance; and, no matter how irregular such sale may be, and whether voidable or not, neither the grantor in such trust-deed, nor his heirs, will be allowed to maintain ejectment against the purchaser at such sale; but, if he or they wish to contest the validity of the purchaser's title, their remedy is by bill in equity to redeem, when the equitable rights of all the parties may be ascertained and protected. *Adams v. Stevens*, 49 Me. 362; *Bank v. Vose*, 23 Id. 98; *Dawson v. Hayden*, 67 Ill. 52; *Graham v. Anderson*, 42 Id. 514; *Railroad Co. v. Kennedy*, 70 Id. 366; *Goddard v. Coe*, 55 Me. 385; *Ingle v. Culbertson*, 43 Iowa, 265, 273.

In this case, sale was made of the entire 80 acres. As between these parties, this might be done. It was not necessary to offer it in parcels, as, at the time Grimley took his deed from Jacob Beeson, the land sold for all it was worth, and at the time it was sold at auction it was used and occupied as a farm, and the two 40-acre parcels adjoined.

It is claimed that the power of sale, as provided for in the defeasance contained in this trust-deed is defective. There can be no question, I apprehend, but that it appears from the testimony that Grimley was a purchaser in good faith, and for a valuable consideration. No fraud is claimed in the case, and our statute provides:

"Purchasers for a valuable consideration, claiming under the defective execution of any power, shall be entitled to the same relief in equity as similar purchasers claiming under a defective conveyance from an actual owner." How. Stat. § 5648.

If the position of plaintiffs' counsel is correct, this statute would seem to furnish an additional reason why their remedy should be in equity.

It appears no demand was ever made upon these defendants for the possession of the premises in question. The

deed from George W. Selph to Jacob Beeson, as well as the defeasance therein contained,—such as it was,—both gave the right of possession to Beeson, and he took all the possession under that instrument he could of wild land, and by his deed conveyed to Grimley the right to enter, possess, and occupy the land. His possession was therefore lawful. This rendered a demand of possession necessary before bringing this suit, in any event. *Reading. v. Waterman,* 46 Mich. 109 (8 N. W. Rep. 691).

Certain it is there are no equities appearing upon this record requiring us to give to the law or practice any strained construction in order that the plaintiffs may maintain this action of ejectment to protect and preserve the rights of these plaintiffs; and especially should this be so held, when another form of remedy is open to them, wherein all the facts may be fully investigated, and the rights of all parties may be ascertained, and equitably adjusted between them.

Whether the views of the circuit judge were correct or not upon the subject of abandonment, it is not important now to consider. I am clearly of opinion he reached a correct result; and he committed no error in directing the verdict for the defendants.

The judgment should therefore be affirmed, with costs.