LINDSAY *v*. ACME CEMENT PLASTER CO.

1. RELEASE—JOINT TORT FEASORS.
   The release of one tort feasor releases all concurrently negligent tort feasors.

2. RAILROADS—NEGLIGENCE—DUTY TO SEE THAT TRACKS ARE SAFE.
   Where a railroad company runs its trains over tracks owned by another, it is bound to see that the tracks are in safe condition.

3. SAME—OWNER OF TRACK BOUND TO KEEP IT IN REPAIR.
   A terminal railroad company owning a spur track which it controlled absolutely, was guilty of negligence in failing to keep' its track in reasonably safe repair, although it was used exclusively by another railroad company by permission of the owner.

4. NEGLIGENCE—RAILROADS—JOINT TORT FEASORS.
   As to an accident which occurred because of the defective condition of the spur track, resulting in the death of a member of the switching crew, the owner of the track and the owner of the switching engine were joint tort feasors, since the accident was dependent on failure of duty on the part of both.

5. SAME — INTERSTATE COMMERCE — CONTRIBUTORY NEGLIGENCE — COMPARATIVE NEGLIGENCE — FEDERAL STATUTE — APPORTIONMENT OF DAMAGES.
   Where the operation of a train causing injury to a railroad employee negligently operating over an unsafe track was interstate, liability is to be tested by the Federal act (8 U. S. Comp. Stat. §§ 8657-8665) which apportions damages where both parties are found negligent.

6. RELEASE — SATISFACTION AGAINST ONE RELEASES JOINT TORT FEASORS.
   Under the common law which obtains in Michigan except as modified by statute, a satisfaction against a party charged with negligence, though in fact not liable, extinguishes all rights of action against all claimed joint tort feasors.

On effect of release of one joint tort-feasor on liability of the other, see notes in 58 L. R. A. 293; L. R. A. 1918F, 363.

7. MASTER AND SERVANT—COMMON CARRIERS—RELEASE OF JOINT
   TORT FEASOR NOT VOID UNDER FEDERAL STATUTE.
      The provision of section 5 of the Federal act (8 U. S.
      Comp. Stat. 1916, § 8661) invalidating any contract ex-
      empting a common carrier from any liability created by
      the act applies only to agreements before the accident,
      and is not in conflict with the common-law rule that a
      settlement with one joint tort feasor releases the rest.

Error to Kent; McDonald (John S.), J.   Submitted
April 6, 1922.   (Docket No. 30.)   Decided November
2, 1922.

Case by Alice E. Lindsay, special administratrix
*de bonis non* of the estate of Luther C. Lindsay, de-
ceased, against the Acme Cement Plaster Company
and another for the alleged negligent killing of plain-
tiff's decedent.   Judgment for defendants on a
directed verdict.   Plaintiff brings error.   Affirmed.

*Clapperton & Owen* (*Angell, Turner & Dyer,* of
counsel), for appellant.

*Knappen, Uhl & Bryant,* for appellees.

STEERE, J.   Plaintiff's husband was killed on Sep-
tember 20, 1912, in a derailing accident while em-
ployed by the Lake Shore & Michigan Southern Rail-
way Company as conductor in charge of a switching
crew at Grand Rapids, Michigan.   He was working
with a switching engine and crew consisting of the
engineer, fireman and a helper.   After dinner on the
day of the accident they did some switching at the
Eagle mills and then under his directions the engineer
ran the switching engine in over a spur track to de-
fendant Acme Cement Company's plant where they
coupled the front of the switching engine to a car
loaded with plaster and proceeded to back out with
it to the main line, Lindsay standing on the running
board of the tender to the engine which put him at
the front of the train in the direction they were going.

While passing around a curve on the spur track the rails spread and capsized the tender which fell upon and fatally injured him. He was then about 50 years of age and an old employee of the Lake Shore Railway Company which had elected to come under the Michigan workmen's compensation act. Soon after his death the Lake Shore Railway Company entered into an agreement with plaintiff as executrix of her husband's estate to pay her $3,000 in settlement for her husband's death, being the maximum amount of compensation for accidental death of an employee specified in the Michigan workmen's compensation act. On November 20, 1912, under authority of the probate court of Kent county and in consideration of the payment of $3,000 as specified, she gave the Lake Shore Railway Company a receipt acknowledging satisfaction in full, reading in part as follows:

"I hereby release and discharge the said company from all claims and demands against it, and especially from all liability for damages of every kind, nature or description, arising from injuries suffered or death sustained by Luther Lindsay, deceased, at or near Grand Rapids, Michigan, on or about the 20th day of September, 1912; said settlement being authorized by order of the probate court of Kent county, in the State of Michigan; and I hereby agree that this release shall be a complete bar in any action which might be brought otherwise at common law or under any State or Federal statute for the benefit of any person or estate whatsoever, for the recovery of damages on account of said injuries or death.".

On December 1, 1912, a further instrument was executed by the parties in form and amount approved by the industrial accident board, stating the circumstances of the accident, and concluding as follows:

"It is agreed by the parties hereto that the said Lake Shore & Michigan Southern Railway Company shall pay to the said Alice Lindsay, administratrix, the sum of three thousand ($3,000.00) dollars, in

weekly instalments of ten ($10.00) dollars. Deceased was earning 35c an hour at the time of his death."

Some time thereafter the Lake Shore Railway Company was absorbed by the New York Central Railroad Company, and on August 30, 1915, plaintiff, as "administratrix of the estate of Luther C. Lindsay, deceased," and "individually," subscribed an assignment which, following recitals touching the events related, reads as follows:

"Now, therefore, for and in consideration of the payment of said sum ($3,000), and in further consideration of one dollar and other valuable consideration paid to the undersigned, I, the said Alice Lindsay, personally, and as administratrix of the estate of Luther C. Lindsay, deceased, do hereby sell, assign, transfer and set over unto the said Lake Shore & Michigan Southern Railway Company, now the New York Central Railroad Company, any and all rights or causes of action, claims or demands whatsoever, which I, either as administratrix as aforesaid, or individually, may have against the Acme Cement Plaster Company or the Grand Rapids Terminal Belt Railway Company, corporations organized and existing under the laws of the State of Michigan, and by whose negligence it is claimed the said Luther C. Lindsay met his death. And I, both as administratrix as aforesaid, and individually, hereby authorize said Lake Shore & Michigan Southern Railway Company, now the New York Central Railroad Company, at its own expense, including counsel for said Alice Lindsay, to bring suit against said Acme Cement Plaster Company and the Grand Rapids Terminal Belt Railway Company, either in its own name or in my name as an individual, or in my name as administratrix, as aforesaid, to enforce any such claim, right or demand, and in the event recovery be had against said Acme Cement Plaster Company and the Grand Rapids Terminal Belt Railway Company, or either of them, as a result of suit or otherwise, the said Lake Shore & Michigan Southern Railway Company, now the New York Central Railroad Company, is authorized to retain the whole thereof, providing the amount thus recovered does not

exceed above all costs and expenses of collection the sum of $3,000 and if such sum does thus exceed $3,000, the said Lake Shore & Michigan Southern Railway Company, now the New York Central Railroad Company, is to return the whole of such surplus as further consideration for this assignment to the undersigned, as administratrix as aforesaid."

This action was subsequently commenced in the circuit court of Kent county in plaintiff's name as administratrix *de bonis non* of her deceased husband's estate to recover of defendants damages for his death, charged to their negligence in failing to maintain the spur track where the accident occurred in a suitable and safe condition for the operation of trains over it. An amended declaration was filed for plaintiff on March 15, 1921, which was met by an amended plea and the case was soon thereafter tried, resulting in a directed verdict for defendants with judgment thereon.

It appears undisputed that the work in which Lindsay was engaged at the time of the accident resulting in his death involved movement of a car in interstate commerce to which the Michigan workmen's compensation act did not apply, and it is conceded an agreement between the parties under that act is not conclusive, as its provisions could only operate upon parties bound by it. The spur track on which the accident occurred was owned by defendant Terminal Belt Railway Company, which was organized and incorporated by a Mr. Lazarus who became its president. He was also a large stockholder in and president of defendant Acme Cement Plaster Company. The track was constructed in 1905 at the same time as the Acme Company's plant, which was the only industry the Terminal Belt Railway Company served. It had no rolling stock or stations, carried no passengers and did not receive or dispatch freight. Its spur track was built by the Lake Shore Railway Company for

Lazarus with funds furnished by him.    The Lake
Shore Railway Company had no written agreement
with the Terminal Belt Railway Company for the use
of this spur but was given the right to switch cars
over it to and from the Acme Company's plant as
its business required, and customarily moved over it
about 50 cars per month.    On different occasions when
the track was out of repair the Lake Shore Railway
Company notified the Terminal Belt Railway Com-
pany of its condition with cost of suggested repairs
and when so authorized made them at the latter's
expense.    Correspondence between the two companies
on that subject shows that the Terminal Belt Railway
Company insisted on reserving full control over this
spur.    In refusing the Lake Shore Railway Com-
pany's overtures for a written agreement it replied in
part:

"We are paying for this sidetrack just exactly what
it costs and it belongs to us and we don't give your
company any rights to use this sidetrack any more
than you give us a right to use your main line.    We
expect to operate a terminal railroad and use our own
engines, and until such time as we get ready to do
this, of course, we will grant you a right to run your
engine over this track."

Although this was written in 1905 those expecta-
tions had not materialized when the accident occurred,
and during the intervening years the spur continued
to be owned by and maintained at the expense of the
Terminal Belt Railway Company and serve the needs
of the Acme Company of which Lazarus was a heavy
stockholder, owning with his family $425,000 of its
$1,000,000 capital stock, while the Lake Shore Rail-
way Company continued to run its switch engines over
the spur in moving the Acme Company's cars to and
from its plant.    When this accident occurred no re-
pairs had been made on the track for about 11 months,
and the fact that it was in poor condition was known

to all parties in interest.    The Lake Shore Railway Company had received repeated reports from its section foreman and roadmaster to that effect and on four different occasions between the preceding March and time of the accident it had notified the Terminal Belt Railway Company of its unsafe condition with request for authority to make suggested repairs, which had not been granted.    The fireman of Lindsay's switching crew testified that they ran over the track "practically every day," and "it was talked amongst them that it was in very poor shape  *  *  * if they didn't fix that track up pretty quick they were going to have an accident."

Though numerous questions are raised and argued those calling for consideration are covered by plaintiff's assignment that—

"The court erred in directing the jury to return a verdict for the defendants for the reason that the plaintiff had not released her cause of action against said defendants, and the jury should have been permitted, under proper charges, to have determined the liability of said defendants."

In directing a verdict for defendants the trial court held that, having settled her claim against the Lake Shore Railway Company, plaintiff thereby released defendants from whatever cause of action she might have had against them for the same tort.

That plaintiff as administratrix and individually made full settlement of her claim for liability against the Lake Shore Railway Company for the death of her husband, the record leaves no doubt.    It was so stated in strong and unmistakable terms in both the agreements of November 20 and December 1, 1912, and distinctly reiterated nearly three years later in the agreement of August 30, 1915, which made clear that whatever the result of contemplated litigation against defendants that settlement stood, with a chance for the Lake Shore Railway Company to recover from

defendants a part or all of the amount it had paid her in settlement of its liability and for her to get further damages from them for the same tort. No fraud is shown as to any of the agreements and when the last was entered into no misunderstanding or mistake of fact as to the movement of freight being interstate commerce can be claimed.

That a release of one tort feasor releases all concurrently negligent tort feasors is a well settled rule of law. *McBride* v. *Scott*, 132 Mich. 176 (61 L. R. A. 445, 1 Ann. Cas. 61, 102 Am. St. Rep. 416) ; *Leddy* v. *Barney*, 139 Mass. 394 (2 N. E. 107) ; *Tompkins* v. *Railroad Co.*, 66 Cal. 163 (4 Pac. 1165) ; *Dulaney* v. *Buffum*, 173 Mo. 1 (73 S. W. 125) ; *Hubbard* v. *Railroad Co.*, 173 Mo. 249 (72 S. W. 1073) ; Baldwin on Personal Injuries, § 27; 34 Cyc. p. 1086; 6 Thompson on Negligence, § 7381.

Plaintiff's contention that the Lake Shore Railway Company was not liable because the defective track belonged to the Terminal Belt Railway Company whose duty it was to keep the same in repair is not tenable. *Doyle* v. *Railway Co.*, 127 Mich. 94 (54 L. R. A. 461, 89 Am. St. Rep. 456) ; *Stetler* v. *Railway Co.*, 46 Wis. 497 (1 N. W. 112) ; *Story* v. *Railroad*, 70 N. H. 364 (48 Atl. 288) ; *Wisconsin Cent. R. Co.* v. *Ross*, 142 Ill. 9 (31 N. E. 412, 34 Am. St. Rep. 49) ; 4 Thompson on Negligence, § 3735; 33 Cyc. p. 715; *Kanawha, etc., R. Co.* v. *Kerse*, 239 U. S. 576 (36 Sup. Ct. 174), which involved the Federal act.

In *Story* v. *Railroad, supra*, it is said:

"The track claimed to be defective was not a part of defendants' railroad but was owned and kept in repair by another railroad corporation which had exclusive control over it. * * * The precise terms upon which they enjoyed such use did not appear. * * * What the contract for the use of the Boston & Maine track by the defendants was, is immaterial. Neither road, by agreement with the other, could re-

lieve the other of any liability as to third persons which the law imposes."

In *Doyle* v. *Railway Co., supra,* this court said:

"The rule is established by the weight of authority that, when a railroad company runs its trains over tracks owned by another, the company is bound to see that the tracks are in a safe condition" (citing cases).

It was the duty of the Terminal Belt Railway Company to keep this spur track in a reasonably safe condition for use. 33 Cyc. p. 711. Incorporated as a common carrier it owned and controlled the same. While the spur was primarily constructed to meet necessities of the Acme Company and further intended development had not been made, yet, in anticipation of becoming the Terminal Belt Line Railroad of Grand Rapids in fact as well as name, it had refused to lease or surrender control of the constructed portion, and in the meantime opened and maintained it for intra and interstate commerce, in which capacity it was used by the only industry it could serve, and in which its president and principal stockholder was heavily interested, and by some arrangement presumably in the interest of both had, "of course," granted the Lake Shore Railway Company the right to operate over it. Under such circumstances failure to keep its track in reasonably safe repair was negligence, without which the accident complained of could not have resulted from the cause charged.

The relations which these two common carriers bore towards each other in the maintenance and use of this track was such that the consequences of their negligence united or intermingled to produce the result. The accident was dependent on failure of duty on the part of both. It could not have happened as it did had either one of them been free from negligence. As to it they were joint tort feasors.

"The weight of authority will, we think, support the more general proposition, that, where the negligences of two or more persons concur in producing a single, indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design or concert action." 1 Cooley on Torts (3d Ed.), p. 247.

"It makes no difference that there was no concert between them, or that it is impossible to determine what portion of the injury was caused by each. If each contributed to the injury, that is enough to bind both." *Corey* v. *Havener*, 182 Mass. 250 (65 N. E. 69).

Defendant's contention that deceased knew of the track's unsafe condition and was guilty of negligence in operating over it calls for scant consideration. Not only was the operation concededly interstate and liability necessarily to be tested by the Federal act (8 U. S. Comp. Stat. 1916, §§ 8657-8665) which apportions damages when both parties are found negligent, but under the common law which obtains here except as modified by statute a satisfaction against a party charged with negligence though in fact not liable extinguishes all rights of action against all claimed joint tort feasors. 6 Thompson on Negligence, § 7381; 34 Cyc. p. 1088; *Hartigan* v. *Dixon*, 81 Minn. 284 (83 N. W. 1091); *Hubbard* v. *Railroad Co., supra; Seither* v. *Traction Co.*, 125 Pa. St. 397 (17 Atl. 338, 4 L. R. A. 54, 11 Am. St. Rep. 905).

It is contended for plaintiff that the Federal act does not recognize the rule of release of all joint tort feasors by release of any one of them, and construed as a release the agreement of August 30, 1915, is void under section 5 of the Federal act which provides that:

"Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act, shall to that extent be void."

This provision only applies to agreements before the accident. The subject is instructively discussed in 2 Roberts on Federal Liabilities of Carriers, p. 1135, where it is said in part, with citation of sustaining cases:

"Such a release is not a contract, regulation or device, the purpose of which is to enable the common carrier to exempt itself from liability under the statute. * * * The provision of section 5 has reference to contracts made by the parties prior to the injury. There is nothing in the statute preventing the parties from agreeing upon the terms of a settlement after the cause of action has arisen out of the injury."

The Federal act is nowhere in conflict with the common-law rule that a settlement with one joint tort feasor releases the rest. In *Wagner* v. *Railroad Co.,* 265 Ill. 245 (106 N. E. 809, Ann. Cas. 1916A, 778), involving an interstate operation coming under the Federal act, plaintiff was a conductor employed by the Burlington railway in charge of a switching crew moving freight on the tracks of the Chicago & Alton when injured. He took no steps to recover damages from his employer under the Federal act but accepted monthly payments from a relief fund department it had provided for its employees years prior to the accident. To this fund employees of the road made monthly payments and he had been doing so since 1902. His employer's contributions to this fund from which he received payments did not exceed 15 per cent. of what he received. His contract with the relief department provided that acceptance by him of its benefits after receiving an injury should operate as a satisfaction of all claims against his employer on account of such injury, and against all other companies associated therewith in administration of their relief departments. He later brought an action for damages against the Chicago & Alton company on

whose tracks the accident occurred, which was not so associated with the Burlington company. The defense was made that a settlement with the Burlington company, which was a joint tort feasor, precluded recovery. The Illinois supreme court said:

"There can be but one satisfaction for an injury, and if defendant in error made a settlement with the Burlington company and released it from further liability, it was a release, also, of plaintiff in error from all liability, as the Burlington company was a joint tort feasor,"

but determined that under the prohibition in section 5 of the Federal act there had been no release. On appeal to the United States Supreme Court the decision was affirmed. *Chicago & Alton R. Co.* v. *Wagner*, 239 U. S. 452 (36 Sup. Ct. 135).

Recognizing "that the release of one joint tort feasor is a release of all—is a rule of the common law, in this case of the common law of Illinois," the United States Supreme Court held it clear that if the injury was suffered while engaged in interstate commerce acceptance of benefits by the injured party under the previously made relief contract could not amount to a valid release of his employer under the Federal act, saying in part:

"When, therefore, the Alton company sought to escape from liability, otherwise existing under the State law, by reason of a release to the Burlington company, it was entirely competent for the plaintiff to show the nature of his employment and that the asserted release was within the Federal statute and could not operate as a discharge of the Burlington company with respect to the injury sustained."

Judgment affirmed.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred. MCDONALD, J., did not sit.