DRINKARD v WILLIAM J PULTE, INC

1. APPEAL AND ERROR—RECORD ON APPEAL—EVIDENCE—PLEADINGS.

A written release from liability is properly a part of the record in a tort case even though not introduced into evidence where the record indicates there were three motions for summary judgment which recited the execution and terms of the release and where the answer to the motions made no denial of the execution of the release or of its contents; the Court of Appeals may properly consider such a release in arriving at a decision.

2. RELEASE—CONSTRUCTION—INDEMNIFICATION CLAUSE.

A party was properly released from liability by a written release where the paragraph dealing with indemnification recited the party in question as being a released party and where, in considering the document as a whole, there could be no question that it constituted a release of the party.

3. NEGLIGENCE—MASTER AND SERVANT—RESPONDEAT SUPERIOR—RELEASE.

A release of either a master or a servant from liability for tort operates to release the other where liability is based upon the doctrine of *respondeat superior;* a plaintiff's claim, in a tort liability action against a general contractor for an injury sustained due to the negligence of an employee of the general contractor's subcontractor, is barred where the plaintiff executed a release of the subcontractor and his employee and where the liability of the general contractor is based on the doctrine of *respondeat superior.*

Appeal from Oakland, Robert. L. Templin, J. Submitted Division 2 March 7, 1973, at Detroit. (Docket No. 13993.) Decided June 27, 1973.

Complaint by Robert E. Drinkard and General

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 515 *et seq.*
[2] 66 Am Jur 2d, Release §§ 28, 35–45.
[3] 53 Am Jur 2d, Master and Servant §§ 408, 409.

Accident, Fire and Life Assurance Corporation against William J. Pulte, Inc., James T. Lynch, Inc., and others for damages for injuries sustained in an industrial accident. Directed verdict for defendants. Plaintiffs appeal. Affirmed.

*Richard G. Eubank,* for plaintiff Drinkard.

*Davidson, Gotshall, Kohl, Nelson, Secrest, Wardle & Lynch* (by *C. Kenneth Perry, Jr.),* for defendants.

Before: J. H. GILLIS, P. J., and McGREGOR AND ADAMS,* JJ.

McGREGOR, J. This appeal involves the grant of a directed verdict by the trial court in favor of defendants William J. Pulte, Inc. and James T. Lynch, Inc., hereinafter referred to as Pulte and Lynch.

The evidence and exhibits indicate that, at the time the subject accident occurred, on November 30, 1963, defendant James T. Lynch, Inc., was the contract purchaser of a certain plot of land located in Oakland County, known as Bennington Green. Subsequent to the accident, William J. Pulte, Inc., purchased the land contract interest of James T. Lynch, Inc., in said land. The transfer and ownership of Bennington Green was properly recorded.

While the land was being subdivided, James T. Lynch, Inc., entered into a written agreement with Superior Installers and Excavating to install sewers and water lines in the proposed subdivision. Superior, in turn, employed Levi Saylor, Jr., doing business as Wilder-Saylor Excavating Company, as a subcontractor to install said sewers and water

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

lines in Bennington Green. Hubbell, Roth & Clark were engaged by Bloomfield Township as engineers to supervise the installation of said sewers and water lines. Plaintiff Drinkard was an employee of Hubbell, Roth & Clark, and in the course of his employment sustained injuries when he was struck by an end loader operated by one Everett Davenport, an employee of Levi Saylor, Jr., doing business as Wilder-Saylor.

In plaintiff's original suit, it was alleged that defendant Pulte, Inc., had hired and contracted with the defendant organization Superior Installers to do certain work in said area. Subsequently this complaint was amended, without incorporating the original complaint, and the amended complaint alleged that the employee who injured plaintiff was acting for and as an agent on behalf of each of the defendants named in the suit. The allegation that Everett Davenport was an employee of defendants Pulte and Lynch was denied in their answer; it was asserted as an affirmative defense that defendants Pulte and Lynch had no control over the activities of the Wilder-Saylor Excavating Company.

Approximately three years after the commencement of the initial suit, plaintiff Drinkard consummated a settlement and released defendant Levi Saylor, Jr., doing business as Wilder-Saylor Excavating Company, from any and all liability arising from the accident upon which the complaint was based. Plaintiff and Levi Saylor further agreed that Levi Saylor and its employee Everett Davenport were to be indemnified by plaintiff as a result of any judgments of negligence arising from plaintiff's complaint or any other complaint arising from plaintiff's injuries or losses. This release was not introduced in evidence.

However, the record indicates that on March 4, 1970, there was a motion for summary judgment by Superior Installers. The motion states:

"That on or about June 13, 1969, plaintiff, Robert E. Drinkard, executed a Release which released Levi S. Saylor d/b/a Wilder-Saylor Excavating Company and Everett Davenport, from any and all liability arising out of an accident occurring on November 31, 1964. (A copy of said release is attached hereto as Exhibit 1.)"

On May 4, 1970, a motion for summary judgment was made by Pulte, Inc. This motion contains the same paragraph regarding the release. Also on May 4, 1970, a motion for summary judgment was made by James T. Lynch, Inc., which also contains the above quoted paragraph.

On May 8, 1970, plaintiff's answer to the motions for summary judgment was filed, in which plaintiff stated:

"A release was executed and its effect depends upon its words. Denied that Davenport was released."

The answer further states:

"Denied that said release as a matter of law bars moving against Pulte."

In view of the fact that there is no denial of the execution of the release or of its contents, we conclude that the release is a proper portion of the record in this case and that it may be considered by us in arriving at a decision. While Everett Davenport's name is stricken from the first paragraph of the release, the third paragraph, dealing with indemnification, states:

"I, Robert Edward Drinkard, agree to satisfy any decree, judgment, or award in which there is such a

described adjudication, but only as to the released parties, Levi S. Saylor Jr. d/b/a Wilder-Saylor Excavating Company and Everett R. Davenport * * * ."

Davenport's name appears several other times in the ensuing document. Considering the document as a whole, we think there can be no question but that it constitutes a release not only of Levi S. Saylor, Jr., doing business as Wilder-Saylor Excavating Company, but also of Everett R. Davenport.

Trial of the principal case was had in circuit court. At trial, only James T. Lynch, Inc., and William J. Pulte, Inc., and its named shareholders remained in the lawsuit as named parties defendant. It was essentially plaintiff's theory that defendants Pulte and Lynch were liable to plaintiff for his injuries because they allegedly owned and controlled the construction of the subdivision project in which plaintiff had been injured.

Following the introduction of plaintiff's proofs, defendants Pulte and Lynch moved for a directed verdict. After hearing opposing argument, the court entered a judgment for the defendants based on the grounds that plaintiff had failed to introduce any proofs or evidence which indicated that defendants Pulte and Lynch controlled or supervised the activities of the subcontractors who were performing construction work on land which these defendants allegedly owned.

From this adverse decision, plaintiff appeals.

Virtually plaintiff's whole claim was based on the theory that the subcontractor, Wilder-Saylor, was not an independent contractor, but was rather an agent or employee of the defendants. In our analysis, we assume that plaintiff's contentions are correct in this respect.

The question before us is whether plaintiff's pretrial settlement, releasing Davenport, and the

court's dismissal with prejudice, releasing Wilder-Saylor, bars any claim he might have against the remaining defendants. It is clear from a reading of the amended complaint that defendants' liability must be, if at all, predicated upon the *respondeat superior* theory incident to the master-servant or principal-agent context. In 76 CJS, Release, § 50, p 689, it is stated:

> "In a situation where several persons are not actively joint tort-feasors but one person commits the tort and is primarily liable while the liability of the other person is derivative or secondary, as where it arises under the doctrine of respondeat superior, the releasor's acceptance of satisfaction from one, discharges the other as well, as in the case of master and servant or principal and agent * * * ."

See also 53 Am Jur 2d, Master and Servant, § 408, pp 416–418; 92 ALR2d 533, § 3(b), pp 539–540.

Before turning to the Michigan authorities on this question, an examination of two cases from other jurisdictions would be helpful. In *Mid-Continent Pipeline Co v Crauthers,* 267 P2d 568 (Okla, 1959), the Supreme Court of Oklahoma stated:

> "[5] Under the facts in this case, the only negligence of which the defendant company could possibly be guilty was the negligence of its agents or employees, the Colpitts, whose pumper turned the wrong valve and caused the oil to flow into the watercourse instead of the pipe line. See 57 CJS, Master and Servant, § 570a, p 294, which reads in part as follows:
>
> " 'Under the doctrine of respondeat superior, a master is liable for injury to the person or property of another proximately resulting from the acts of his servant done within the scope of his employment in the master's service.'
>
> "Therefore, the liability of the defendant pipe line

company can arise, if at all, only by virtue of the doctrine of respondeat superior.

"[6, 7] As hereinabove recited, the Colpitts made a settlement with the plaintiff herein, and received a 'Release and Covenant Not to Sue.' Such being the case, defendant pipe line company (the master) cannot be held to answer under the doctrine of respondeat superior. See 35 Am Jur, Master and Servant, § 535, p 963, wherein the following is found:

" 'According to the great weight of authority, where both master and servant are liable to a third party for a tort of the servant, a valid release of either master or servant from liability for the tort operates to release the other * * * .'

* * *

"The above rule is of course inapplicable where the master is guilty of some independent or concurring act of negligence, but in the instant case no such act was either pleaded or proved.

"Therefore, since the defendant herein is not liable by reason of 52 OS 1951 § 296, is not guilty of any independent or concurring act of negligence, and cannot be held liable under the doctrine of respondeat superior because the servant was released, it follows that the plaintiff was not entitled to recover." 267 P2d at p 571.

Also, the Supreme Court of Louisiana, in a case very similar to the instant one, *Williams v Marrionneaux*, 240 La 713, 722–727; 124 So 2d 919, 922–924 (1960), stated:

"In Louisiana, the liability of the servant for damage under Article 2315 of the Civil Code for injuries to another caused through his negligence is primary. Conversely, the liability imposed on the master by Article 2320 of the Code in favor of third persons for the damages occasioned by his servant's negligence, while exercising the functions in which the servant is employed, rests solely on the principle of respondeat superior and is derivative or secondary in all cases where the master himself is not at fault. See *Cox v Shreveport Packing Co*, 213 La 53; 34 So 2d 373 (1948). Hence

under our law, unlike some common law states (see 57
CJS, Master and Servant § 579, pp 350–352), the master
is not considered a joint tortfeasor with his servant
when his liability for the negligence of the servant is
based solely on the doctrine of respondeat superior.
Accordingly, since the liability of the master in a case
like this is purely derivative, he is entitled to reim-
bursement from his servant, the one primarily responsi-
ble, in the event he is required to pay damages to the
injured party resulting from the servant's negligence.
*Brannan, Patterson & Holliday v Hoel,* 15 La Ann 308
(1860); *Costa v Yochim,* 104 La 170; 28 So 992 (1900).
The rule stated in the above cited cases has been
followed without exception and applied in kindred situ-
ations in which a party whose liability is vicarious has
sought and been awarded reimbursement from the
tortfeasor, the person primarily liable for the injuries
and damage. *Sutton v Champagne,* 141 La 469; 75 So
209 (1912), and *Appalachian Corp v Brooklyn Cooperage
Co,* 151 La 41; 91 So 539 (1922). See also *Rumpf v Callo,*
16 La App 12; 132 So 763 (1931), and *Spurlock v Boyce-
Harvey Machinery,* 90 So 2d 417 (La App, 1956).

"[6] Since Marrionneaux had the right to recoup from
Blanchard whatever damages he might have been
obliged to pay plaintiff for injuries resulting from
Blanchard's negligence while the latter was acting in
furtherance of his duties as Marrionneaux's employee,
the question arises as to the legal effect produced by the
compromise and settlement by plaintiff of his claim
against Blanchard, in which he covenanted to indem-
nify and save Blanchard harmless for all claims and
demands for damages growing out of the accident. This
release, in our view, not only operated to discharge
Blanchard as the party primarily responsible; it effected
a complete release of Marrionneaux, who was only
secondarily liable. And this, despite the attempted res-
ervation by plaintiff in the release of all of his rights
against Marrionneaux and his liability insurer.

"There was but one cause of action which the law
gave plaintiff in recompense for his injuries. That cause
of action sounded exclusively in tort under Article 2315
of the Civil Code. Under Article 2320 this same cause of
action for Blanchard's alleged tort was assertable

against Marrionneaux but it was cognizable only because Blanchard was allegedly acting in his function as an employee of Marrionneaux at the time Blanchard committed the negligent act causing plaintiff's injury. Now, when Blanchard compromised with plaintiff, he repaired his wrong and, therefore, was fully acquitted from further liability. This acquittance inured to the benefit of Marrionneaux for the release of the tortfeasor must be held to release Marrionneaux also from further responsibility, as his liability for the tortious act was vicarious in nature and derived solely from his legal relation to the wrongdoer.

"To give legal effect to the reservation contained in the release, as plaintiff would have us do, would produce consequences of a most unseemly nature—for, if Marrionneaux should be held responsible to plaintiff notwithstanding that the tortfeasor has already repaired the wrong conformably with Article 2315, Marrionneaux would be entitled to reimbursement from Blanchard, as the party primarily responsible, and Blanchard, in turn, would be entitled to indemnification from plaintiff as he contractually agreed to save Blanchard and his insurer harmless for all claims and demands for damages on account of the accident.

"The contention of plaintiff's counsel in this case is that the $4,750 paid by Blanchard was only partial compensation for the injuries and special damages plaintiff sustained and that he has the right to collect the remainder from Marrionneaux as this right was specifically reserved in the release.

"[7] The answer to this proposition is two-fold. In the first place, plaintiff had only one cause of action, as aforesaid, for the damages sustained by him. This action for damages cannot be split into two causes of action. See *Norton v Crescent City Ice Mfg Co,* 178 La 135, 150; 150 So 855, 859 (1933), and *P Olivier & Sons v Board of Commissioners,* 181 La 802; 160 So 419 (1935).

"Furthermore, for the reasons above stated, we do not regard the reservation of rights against Marrionneaux contained in the release to be effective. Indeed, since the compromise had the legal effect of discharging Marrionneaux, plaintiff's reservation of his rights against Marrionneaux in the release amounted to

naught as plaintiff no longer had any legal rights to reserve."

The Michigan Supreme Court, in *Geib v Slater,* 320 Mich 316, 321; 31 NW2d 65, 67–68 (1948), dealt with a similar problem. There, the Court held that a release given to a driver of a car which killed plaintiff's decedent operated as a bar to plaintiff's claim against the owner. Plaintiff sought to recover against the defendant owner of the vehicle under the statute which imposed liability upon the owner of a motor vehicle for the negligence of persons operating it with his consent. A suit brought against the operator of the vehicle and his employer was dismissed with prejudice following a settlement. The trial court granted defendant owner's motion for judgment on the pleadings based on the release. Our Supreme Court affirmed, stating:

"The same reasoning applies in the instant case. Defendant is guilty of no tortious act; he did not participate in the commission of the tort; and his liability arises only by operation of law. He is not a joint tortfeasor, but his statutory liability is based upon the doctrine of *respondeat superior.* It may be compared with that of a surety for the honesty of an employee, whose obligation differs from that of his surety. Thus, section 2 of Act No. 303 [1941 PA 303, § 2], is not a bar to the defendant's plea in this case.

"By the great weight of authority, a valid release of either the master or servant from liability for tort operates to release the other. See annotation, 126 ALR 1199, p 1199, and cases there cited.

"Plaintiff, in his brief, calls attention to a number of cases from other jurisdictions, many of them from inferior courts, in which the term 'joint tort-feasor' was used. There is no question but that the term has frequently been used carelessly. The question here presented was not considered in *Conover v Hecker,* 317

Mich 285 [26 NW2d 774 (1947)], in which all of the defendants were guilty of negligence. *Kallas v Lincoln Mutual Casualty Co,* 309 Mich 626 [16 NW2d 99 (1944)], and *Larabell v Schuknecht,* 308 Mich 419 [14 NW2d 50 (1944)], involved covenants not to sue, and the rule as to such covenants differs from the rule as to releases. See *Garstka v Republic Steel Corp,* 294 Mich 387, 396–397 [293 NW 691, 694 (1940)], and cases there cited.

"The trial judge properly held that defendant was not a joint tort-feasor and his order granting defendant's motion for judgment of no cause of action is affirmed, with costs to defendant."

In *Moore v Palmer,* 350 Mich 363, 394; 86 NW2d 585, 596–597 (1957), the Supreme Court overruled that portion of the opinion in *Geib v Slater, supra,* which held the Michigan owner liability act[1] to be based upon the doctrine of *respondeat superior.* However, the *Moore* case did not overrule that portion of the *Geib* case which stated that a release of either master or servant from liability for tort operates to release the other.

In the instant case, plaintiff legally released Wilder-Saylor and its employee who caused the injury. Therefore, defendants are correct in their contention that plaintiff's claim against defendants would be barred by virtue of his release of the subcontractors. The trial court never ruled on this question because it found, as a matter of law, that the subcontractors were "independent contractors".

Since a valid release of either the master or servant from liability for tort operates to release the other where liability is based upon the doctrine of *respondeat superior,* plaintiff's release of Wilder-Saylor and Everett Davenport, the employee who actually committed the tort, consti-

---

[1] Now MCLA 257.401; MSA 9.2101.

tutes a release of their principals, the remaining defendants.

Other alleged errors are not significant to this determination.

The judgment is affirmed.

All concurred.