WITUCKE v PRESQUE ISLE BANK

1. MOTIONS—ACCELERATED JUDGMENT—SUMMARY JUDGMENT—MISLA-
   BELING—RELEASE—COURT RULES.

   A defendant's motion that a claim is barred because of a release
   given by a plaintiff to certain other defendants is properly
   labeled as a motion for accelerated judgment and not as a
   motion for summary judgment; however, the mislabeling of
   such a motion will not prevent the Court of Appeals from
   consideration of questions raised by the motion, particularly in
   the absence of an objection to the mislabeling (GCR 1963,
   116.1[5]; 117.2[3]).

2. RELEASE—JOINT TORTFEASORS—INDEPENDENT CONCURRENTLY NEG-
   LIGENT TORTFEASORS—STATUTES.

   A release of one joint tortfeasor does not release other joint
   tortfeasors; the application of the release doctrine does not
   apply to independent concurrently negligent tortfeasors (MCLA
   600.2925; MSA 27A.2925).

3. RELEASE—TORTFEASORS—DISCHARGES—PRIMARY LIABILITIES—SEC-
   ONDARY LIABILITIES—RESPONDEAT SUPERIOR—MASTER AND SER-
   VANT.

   A releasor's acceptance of satisfaction from one tortfeasor dis-

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Summary Judgment § 1 *et seq.*
[2, 3, 7] 66 Am Jur 2d, Release § 37 *et seq.*
  Release of one joint tortfeasor as discharging liability of others:
    modern trends. 73 ALR2d 403.
[3, 7] 53 Am Jur 2d, Master and Servant § 408.
  Release of (or covenant not to sue) master or principal as affecting
    liability of servant or agent for tort, or vice versa. 92 ALR2d 533.
[4, 5] 53 Am Jur 2d, Master and Servant §§ 420, 421, 426.
  57 Am Jur 2d, Negligence § 115 *et seq.*
[6] 57 Am Jur 2d, Negligence §§ 108, 109.
[8] 57 Am Jur 2d, Negligence §§ 6, 7, 9.
[9] 18 Am Jur 2d, Contribution §§ 40–42, 47.
  57 Am Jur 2d, Negligence §§ 435, 436.
  Contribution between negligent tortfeasors at common law. 60
    ALR2d 1366.
  Uniform Contribution Among Tortfeasors Act. 34 ALR2d 1107.

charges any other tortfeasor as well in a situation where several persons are not actively joint tortfeasors, but one person commits the tort and is primarily liable while the liability of the other person is derivative or secondary, as where it arises under the doctrine of *respondeat superior;* this rule is inapplicable where the master, in a master and servant relationship, is guilty of some independent or concurring act of negligence.

4. MASTER AND SERVANT—NEGLIGENCE—INHERENTLY DANGEROUS ACTIVITIES—PRINCIPAL AND AGENT—NONDELEGABLE DUTIES.

An essential element of the "inherently dangerous" doctrine is the failure of a principal to see that all appropriate precautions are taken by the one to perform the inherently dangerous task for the principal; there is a nondelegable duty for the principal to see that any work done by a contractor or agent is done with the requisite degree of care and when the contractor or agent fails in fulfilling its duty of care, the principal has breached its own precautionary duty.

5. RELEASE—NEGLIGENCE—INHERENTLY DANGEROUS ACTIVITIES—PRINCIPAL AND AGENT—INDEPENDENT CONTRACTORS.

The release of an independent contractor would not release a principal from liability in an action alleging an "inherently dangerous" theory of liability because such a theory requires the principal's own negligence.

6. NEGLIGENCE—INHERENTLY DANGEROUS ACTIVITIES—JURY—QUESTION OF FACT.

The determination of whether an activity is inherently dangerous is a question of fact for the jury.

7. RELEASE—NEGLIGENCE—MOTIONS—SUMMARY JUDGMENT—THEORIES OF LIABILITY—JOINT VENTURE—RES IPSA LOQUITUR.

A defendant's motion for summary judgment on the basis that a release given to a joint tortfeasor served as a release of the defendant also was properly denied where the plaintiff was proceeding on a joint venture theory of liability and a *res ipsa loquitur* theory and both theories require that the defendant be independently or concurrently negligent.

8. NEGLIGENCE—QUESTION OF FACT—DIRECTED VERDICT.

Negligence is a question of fact and not of law; therefore, the entry of a directed verdict based on the lower court's determination that a defendant was liable as a matter of law was improper where the Court of Appeals is convinced by an examination of the record that reasonable men could differ

concerning the defendant's negligence under any of a plaintiff's theories of liability for negligence.

9. CONTRIBUTION—CROSS CLAIM—SEVERANCE—PREJUDICE TO PLAIN-TIFFS—NEGLIGENCE—PROOF OF NEGLIGENCE.

A defendant's cross claim against a third party for contribution should not be severed from the main trial where the issue of contribution will be very much alive if the defendant is found to be liable under any of a plaintiff's theories and where the plaintiff will not be prejudiced if the defendant is allowed to introduce proofs of the third party's negligence and where plaintiff must show the third party to have been negligent in order to recover under any of the theories pled by the plaintiff.

Appeal from Oakland, William John Beer, J. Submitted January 15, 1976, at Detroit. (Docket No. 24311.) Decided April 27, 1976. Leave to appeal denied, 397 Mich 842.

Complaint by Eugene Witucke against Presque Isle Bank, Midwest Auto Recovery and Adjustment Service, and Richard H. Austin, Secretary of State, seeking damages for personal injuries suffered by the plaintiff while plaintiff's automobile was being repossessed. The claim against the Secretary of State was dismissed. The plaintiff and Midwest reached an out-of-court settlement. A judgment was entered against the bank. Defendant bank appeals. Reversed and remanded.

*Neal L. Grossman* and *Mitchell M. Grossman,* for plaintiff.

*Sommers, Schwartz, Silver, Schwartz & Tyler, P. C.* (by *David M. Tyler* and *Richard Toth),* for defendant Presque Isle Bank.

Before: McGREGOR, P. J., and BASHARA and AL-LEN, JJ.

BASHARA, J. Defendant bank appeals a jury verdict of $225,000 entered against it in Oakland

County Circuit Court. Defendant alleges the trial judge erroneously denied its summary judgment motion, improperly issued a directed verdict on liability in plaintiff's favor, and mistakenly severed from the main suit its third-party complaint.

The facts precipitating this law suit are readily stated. Plaintiff claimed serious injury occurred on December 31, 1972, when he attempted to prevent the apparent repossession of his automobile. Defendant had financed the purchase of the car and had authorized Midwest Auto Recovery to repossess the car after plaintiff fell behind in payments. Four persons who allegedly identified themselves to plaintiff as Midwest employees—but who were not produced at any of the proceedings below—allegedly ran over the plaintiff as they drove off with the repossessed auto.

In April, 1973, plaintiff filed a complaint against the bank, Midwest, and the Michigan Secretary of State seeking damages for his extensive injuries. Subsequently the claim against the Secretary of State was dismissed. Plaintiff and Midwest reached an out-of-court settlement, in which plaintiff received $50,000 and agreed not to sue Midwest directly, or to enforce any indirect rights in the event plaintiff successfully sued the bank,[1] and the

---

[1] The exact release language follows: "It is further understood that should plaintiff prevail in the pending action against PRESQUE ISLE BANK, A State Banking Corporation, and should PRESQUE ISLE BANK or any other Defendant or any other party by virtue of this pending action obtain judgment against MIDWEST AUTO RECOVERY AND ADJUSTMENT SERVICE, INC., that Plaintiff will execute any documents or take any necessary step to relieve MIDWEST AUTO RECOVERY AND ADJUSTMENT SERVICE, INC. from any obligation to satisfy or pay such judgment on such cross-claim.

"It is expressly agreed that in the event Plaintiff obtains judgment against PRESQUE ISLE BANK, A State Banking Corporation, and that PRESQUE ISLE BANK obtains a judgment for contribution against MIDWEST AUTO RECOVERY AND ADJUSTMENT SERVICE, INC., that Plaintiff will seek to execute or collect only such sums of money from PRESQUE ISLE BANK as represent the liability

bank recovered indemnification or contribution from Midwest.

There followed a blizzard of pleadings: amended complaints, amended answers, and cross claims. At the conclusion of the pleadings, plaintiff had advanced a hodgepodge of theories under which the defendant was alleged to be liable: (1) the bank and Midwest were joint venturers and hence joint tortfeasors; (2) the bank was negligent in selecting Midwest to repossess plaintiff's car; (3) the bank was liable under a *res ipsa loquitur* theory; (4) the bank was liable because Midwest, as an independent contractor, negligently performed the inherently dangerous activity of auto repossession; and (5) the bank was vicariously liable for the acts of its agent, Midwest.

Defendant denied liability under all of these theories, asserting that Midwest was an independent contractor performing a delegable duty that was not inherently dangerous and asserting that the release barred plaintiff from suing the bank. The bank filed a cross claim against Midwest, seeking indemnity and contribution in the event that plaintiff recovered from the bank.

The bank then filed a motion for summary judgment claiming that plaintiff's release of Midwest barred plaintiff's action against the bank. The judge denied the motion, allowing plaintiff to proceed on all his theories. After a seven day trial,

---

of PRESQUE ISLE BANK over and above that which PRESQUE ISLE BANK has obtained judgment against MIDWEST AUTO RECOVERY AND ADJUSTMENT SERVICE, INC.

"It is further agreed that in the event Plaintiff obtains judgment against PRESQUE ISLE BANK, a State Banking Corporation, and if PRESQUE ISLE BANK should obtain judgment on its cross-claim for indemnity against MIDWEST AUTO RECOVERY AND ADJUSTMENT SERVICE, INC., that Plaintiff shall not seek execution or collection against PRESQUE ISLE BANK, A State Banking Corporation."

the trial judge issued a directed verdict as to liability, holding that the issues presented no question of fact. He instructed the jury to consider only the amount of damages. At the same time, he severed the bank's cross claim against Midwest from the case, on the grounds that plaintiff would be prejudiced were the jury to consider the cross claim.

The jury returned a verdict of $225,000 against the bank. The trial court denied defendant's motion for a new trial.

## I. Summary judgment ruling

It is our opinion the trial judge erred in allowing plaintiff to proceed on all of his theories. The court should have granted partial summary judgment for defendant, weeding out any theory that, given the existence of the release, was untenable as a matter of law.[2]

Under common law, the release of one joint tortfeasor released all other joint tortfeasors. See *McBride v Scott,* 132 Mich 176; 93 NW 243 (1903).

[2] We note, in passing, that defendant bank's motion for summary judgment was made under GCR 1963, 117.2(3), which requires an affidavit. The defendant's motion in this case was accompanied by an affidavit from defendant's attorney, a practice that is condemned in certain instances. *E.g. Jones v Shek,* 48 Mich App 530, 533; 210 NW2d 808 (1973). However, we believe that the knowledge of the release was properly sworn to by the affiant-attorney. Moreover, there was no objection to a lack of conformity with GCR 1963, 117.2(3). *See Polite v Michigan Tae Kwon Do Association, Inc,* 17 Mich App 580, 582 n 4; 170 NW2d 184 (1969).

A more difficult question concerning the motion is its classification as a summary judgment motion. A motion that claim is barred because of a release is properly filed as a motion for accelerated judgment. GCR 1963, 116.1(5). *See, e.g. Malone v SCM Corp,* 63 Mich App 11, 14; 233 NW2d 872 (1975). However, mislabeling of the motion will not prevent our consideration of the question, particularly in the absence of an objection to the mislabeling. *See Van Liere v State Highway Department,* 59 Mich App 133, 136 n 1; 229 NW2d 369 (1975).

At least one Michigan case extended this principle by stating the release of one tortfeasor releases all concurrently negligent tortfeasors. *Lindsay v Acme Cement Plaster Co,* 220 Mich 367, 374; 190 NW 275 (1922).

In *Lindsay* the Court found that two railroads had independent and separate duties to maintain railroad tracks in a safe and operable condition. Both railroads breached their independent duties to maintain the tracks, which constituted concurrent negligence, resulting in the death of the plaintiff's decedent. The Court erroneously concluded that concurrently negligent tortfeasors were joint tortfeasors, and therefore, incorrectly applied to the *Lindsay* factual situation the doctrine that the release of one joint tortfeasor released all joint tortfeasors.

However, as explained in Prosser on Torts (4th ed), § 49, p 301, 302, at common law the release doctrine was not intended to apply to concurrently negligent tortfeasors:

"[A] release to one of two tortfeasors who had acted in concert necessarily released the other, since there was in the eyes of the law but one cause of action against the two, liable for the same acts, which was surrendered. But as to independent wrongdoers, not acting in concert, who were liable for the same loss, there seems to be no reason to conclude that a release of one would release the others, except in so far as it was based upon actual satisfaction of the claim.

\* \* \*

"[C]auses of action against mere concurrent tortfeasors not acting in concert have always been separate, and their separate character should not be affected by the possibility of joinder for procedural convenience. A surrender of one therefore should not on any logical or reasonable basis discharge the other, except to the extent that there has been full compensation. Even as

applied to cases of concerted action, the rule seems at best an antiquated survival of an arbitrary common law procedural concept, arising out of long forgotten semi-criminal forms of action; and it has no reasonable application at all to cases of mere concurrent negligence. The fear of double recovery is meaningless, since the amount paid under the release must be credited to the second tortfeasor in any case; and the argument that the plaintiff should not be permitted to make piecemeal collections from different defendants is quite pointless when he is allowed to do precisely that after judgment." (Footnotes omitted.)

The next important historical progression was the enactment of PA 1941, No. 303; 1948 CL 691.562; MSA 27.1683(2). It provided in material part:

"Sec. 2. It shall be lawful for all persons having a claim or cause of action against 2 or more *joint tort-feasors* to compound, settle with, and discharge, at any time prior to rendition of a judgment in said action, any and everyone or more of said *joint tort-feasors* for such sum as such person may deem fit, without impairing the right of such person or persons to demand and collect the balance of said claim or cause of action from the remaining *joint tort-feasors,* against whom such person, or persons, has such claim or cause of action, and not so released." (Emphasis supplied.)

In *Conover v Hecker,* 317 Mich 285; 26 NW2d 774 (1947), the Court relied on the above statute in holding that the release of one independent concurrently negligent tortfeasor did not release the other similar tortfeasors. Apparently, the Court believed a "joint tortfeasor" included an independent concurrently negligent tortfeasor.

One year later the Michigan Supreme Court had occasion in *Geib v Slater,* 320 Mich 316; 31 NW2d

65 (1948), to consider the definition of joint tortfeasor, as it appeared in the aforementioned statute on release. In *Geib* the defendant left his car at a garage for repair. An employee of the garage negligently backed the car into the plaintiff seriously injuring him. The plaintiff reached a settlement with the garage owner, and released both the garage owner and his employee. The plaintiff proceeded against the defendant on the basis of the owner's liability statute.

The Court relied on *Frye v Detroit,* 256 Mich 466; 239 NW 886 (1932), which determined whether the common law definition of "joint tortfeasor" included persons concurrently committing two separate torts. *Frye* had quoted approvingly *Dickson v Yates,* 194 Iowa 910; 188 NW 948; 27 ALR 533 (1922), as follows:

" 'It is not the injury, but the wrongful act, which creates the liability. If the acts of the different persons are different and separate when done, they may not be called joint acts because they happen to occur at the same time or at different times and affect the same person, neither party having any design in the matter or any control or influcence over the acts of the other.' " 256 Mich 466, 471.

The Court determined the defendant was not a joint tortfeasor because his liability arose by operation of law, that is the owner's liability statute. Since the defendant's liability was merely derivative, release of the negligent garage employee operated to release the defendant.

Moreover, *Geib* called attention to the frequently careless use of the term "joint tortfeasor". The Court pointed to *Conover v Hecker, supra,* as neither presenting nor considering the definition of joint tortfeasor. The implication is that *Con-*

*over's* reliance on the release statute, 1948 CL 691.562; MSA 27.1683(2), was incorrect.

If *Geib* left any doubt that the release statute only applied to joint tortfeasors, the matter was resolved by *Moyses v Spartan Asphalt Paving Co,* 383 Mich 314; 174 NW2d 797 (1970). *Moyses* was a contribution case which dealt with the definition of joint tortfeasors. Contribution and release[3] are contained within different sections of the same statute. MCLA 600.2925; MSA 27A 2925. Moyses said of the joint tortfeasor:

"In general it was, and still is, that where two (or more) persons owe to another the same duty and by their common neglect of that duty such other is injured, the two (or more) have committed a joint tort and therefore are *joint* tortfeasors." 383 Mich 314, 329. (Emphasis supplied.)

The Court continued:

"When one speaks specifically of *joint tortfeasors,* he does not refer (a) to wrongdoers the liabilities of whom arise out of variant legal positions, the concurrently applied but legally different derelictions of whom make them *severally* responsible to the plaintiff in damages, or (b) to the acts or omissions of several who act independently rather than in concert, or (c) to those who may—under present rules of court—be joined as defendants, *by the plaintiff* (see GCR 1963, 206), and held responsible to him for damages sustained on account of their causally cooperating but non-joint acts or omissions, say by the negligence of one, the violation of a statute like the dramshop act by another, and the breach by still another of 'an express or legally implied warranty." 383 Mich 314, 331–332. (Emphasis supplied.)

Since contribution and release are provided for

---

[3] The release statute was redrafted without significant change by PA 1961 236, MCLA 600.2925(2); MSA 27A.2925(2).

in the same statute, the definition of joint tortfeasors necessarily affects release as well as contribution. The statute only abrogates the release doctrine as it applies to common law joint tortfeasors, that is, the release of one joint tortfeasor does not release other joint tortfeasors. The application of the statute to independent concurrently negligent tortfeasors in *Conover v Hecker, supra,* was erroneous.

Moreover, *Moyses* applied the common law definition of "joint tortfeasor" to the statute, thus restricting any Michigan common law that had expanded joint tortfeasor to include independent concurrently negligent tortfeasor. Therefore, *Lindsay* was overruled *sub silentio* by *Moyses.* The result is that the common law before *Lindsay* is revived, that is, the release doctrine does not apply to independent concurrently negligent tortfeasors.

There is, nonetheless, a more recent release doctrine that must be considered. *Drinkard v William J Pulte, Inc,* 48 Mich App 67, 72; 210 NW2d 137 (1973), states this doctrine:

" 'In a situation where several persons are not actively joint tort-feasors but one person commits the tort and is primarily liable while the liability of the other person is derivative or secondary, as where it arises under the doctrine of respondeat superior, the releasor's acceptance of satisfaction from one, discharges the other as well, as in the case of master and servant or principal and agent * * * .' " 48 Mich App 67, 72, citing 76 CJS, Release, § 50, p 689.

Given this legal principle and the undisputed existence of the release, we must determine if any of the plaintiff's theories of liability should have been summarily dismissed under the *Drinkard* rule. Certainly the bank's liability as a principal

responsible for the torts of its agent-servant is eliminated. *Drinkard, supra.*

That is the sole theory which should have been dismissed. Denial of summary judgment on the other theories of liability was proper, as the release did not affect the remaining theories.

We believe that any liability for injuries resulting from "inherently dangerous" activities of Midwest as an independent contractor properly remained in the case. Although the "inherently dangerous" doctrine is not without some confusion, see *Funk v General Motors Corp,* 392 Mich 91, 128–129; 220 NW2d 641 (1974), (COLEMAN, J., dissenting), we believe that an essential element of the doctrine is the failure of the principal to see that all appropriate precautions are taken by the one to perform the inherently dangerous task. The doctrine, in short, says that the principal is negligent, and hence liable, because it has allowed the independent contractor to be negligent in performing the job. There is a nondelegable duty to see that the work is done with the requisite degree of care; when the contractor fails in fulfilling its duty of care, the principal has breached its own precautionary duty.

Because the "inherently dangerous" theory requires the principal's own negligence, the release of the independent contractor Midwest would not release the principal bank. As was stated in *Drinkard:*

> " 'The above [release] rule is of course inapplicable where the master is guilty of some independent or concurring act of negligence.' " 48 Mich App 67, 73, citing *Mid-Continent Pipeline Co v Crauthers,* 267 P2d 568, 571 (Okla, 1954).

Our deciding that the release did not warrant

dismissal of plaintiff's "inherently dangerous" theory does not mean that we accept that repossession is an inherently dangerous activity or there is a nondelegable duty to repossess peacefully.[4] Defendant based his summary judgment motion only on the effect of the release and did not argue that as a matter of law repossession is not inherently dangerous.[5] We determine only that the release of Midwest did not prevent plaintiff from proceeding against defendant on this theory.

Plaintiff's theory that defendant was negligent in choosing Midwest to effectuate repossession similarily survived the summary judgment motion. This theory asserts defendant's independent negligence and avoids the *Drinkard, supra,* rule. Plaintiff's joint venture theory and plaintiff's *res ipsa loquitur* theory also survive this particular summary judgment motion, as both require that defendant bank be independently or concurrently negligent.

## II. Directed verdict

Our permitting the plaintiff to argue that defendant was independently and/or concurrently

---

[4] Because the plaintiff and defendant bank had a contract, and because MCLA 440.9503; MSA 19.9503, requires that, as a part of the contract the repossession not result in a breach of the peace, the bank's duty may be nondelegable because of contract principles rather than a policy determination arising solely from tort principles. We are not certain if plaintiff has pleaded a contractual cause of action. The implied terms of the contract might nonetheless be considered in assessing, under tort principles, whether repossession is "inherently dangerous". *See Parker v The Associates Discount Corp,* 44 Mich App 302, 304; 205 NW2d 300 (1973).

[5] Under *Vannoy v Warren,* 15 Mich App 158; 166 NW2d 486 (1968), *lv den,* 382 Mich 768 (1969), *reh* 26 Mich App 283; 182 NW2d 65 (1970), *aff'd* 386 Mich 686; 194 NW2d 304 (1972), the determination of whether an activity is inherently dangerous was said to be a question of fact for the jury. *But see Funk v General Motors Corp,* 392 Mich 91, 136; 220 NW2d 641 (1974) (COLEMAN, J., dissenting).

negligent is one matter; the lower court's determining that defendant was liable as a matter of law is quite another. The defendant was denied an opportunity to argue several important points in dispute. Was plaintiff injured by someone other than Midwest employees? Was plaintiff injured solely or partially through his own fault? Was the bank reasonable in selecting Midwest to repossess? Is repossession inherently dangerous? Was Midwest negligent, reckless, or intentionally tortious in performing the task? Were Midwest and defendant joint venturers? The defendant was unable to pose these questions and argue its answers before the jury.

The only theories that should have been available to the plaintiff require that plaintiff prove that the bank was negligent. It is well settled that:

" 'As a general rule, it can not be doubted that the question of negligence is a question of fact and not of law.' " *Miller v Miller,* 373 Mich 519, 524; 129 NW2d 885 (1964), citing *Detroit & Milwaukee R Co v Van Steinburg,* 17 Mich 99, 118 (1868).

Our examination of the record convinces us that reasonable men could differ concerning the bank's negligence under any of plaintiff's theories. A directed verdict was therefore improper. See *Andrews v Insurance Co of North America,* 60 Mich App 190, 202; 230 NW2d 371 (1975), *remanded* 394 Mich 464; 231 NW2d 645 (1975), and cases cited therein.

Accordingly we remand for a new trial. It is unfortunate that these proceedings need be repeated. It would be even more distasteful were we to deny a party the right to argue its defense before a jury.

## III. Severance of cross claim

Defendant claims that the trial court erred in severing defendant's cross claim against Midwest from the trial of plaintiff's claim against defendant. We believe that the cross claim's request for indemnification is moot. Indemnification question should not arise in the new trial, as the only theories of liability which will properly be considered involved defendant bank's own negligence, thus ruling out common law indemnity. See *Husted v Consumers Power Co,* 376 Mich 41; 135 NW2d 370 (1965).

However, the issue of contribution will still be very much alive if defendant is found liable under any of plaintiff's theories.[6] We believe that the proper approach is to try all claims together. There will be no prejudice to plaintiff if the bank is allowed to introduce proofs of Midwest's negligence. Plaintiff must show Midwest to be negligent in order to recover under any of the theories thus far pled. Given the absence of prejudice and the added convenience and economy resulting from one trial, we instruct the court on retrial to refrain from severing the cross claim for contribution. See *Nanasi v General Motors Corp,* 56 Mich App 652; 224 NW2d 914 (1974).

Reversed, costs to await results of new trial.

---

[6] As we have stated above, liability for injuries resulting from inherently dangerous activities requires negligence of both the principal and the independent contractor. Liability under the "negligent-selection-of-a-known-to-be-careless-repossessor" theory also requires a negligence of both the principal and the agent. Similarly, liability under a "joint tortfeasor" theory calls for concurrent negligence of both the bank and Midwest—they are alleged to be joint tortfeasors. Contribution is therefore available under MCLA 600.2925(1); MSA 27A.2925(1). *See Moyses, supra.* Finally, under the *res ipsa loquitur* theory contribution would be available because both the bank and Midwest are alleged to be negligent. *See Moyses, supra.*