THEOPHELIS v LANSING GENERAL HOSPITAL

Docket No. 72194. Submitted October 5, 1984, at Lansing.—Decided
March 4, 1985.

Seven-year-old Gene Christopher Schneider was admitted to Lans-
ing General Hospital for a tonsilectomy and a bilateral tympa-
notomy. During the tympanotomy Schneider suffered a cardiac
arrest, but was resuscitated and placed in the intensive care
unit. The following day, he suffered a second cardiac arrest and
was placed on a respirator. Six days later, he was taken off the
respirator after an electroencephalogram revealed no brain
wave activity. A pathologist diagnosed anesthetic death. James
Theophelis, personal representative of the estate of Gene Chris-
topher Schneider, deceased, and Gene L. and Gloria Schneider,
parents of the deceased, filed a wrongful death action against
Lansing General Hospital, Capital Anesthesiologists, P.C., and
the doctors involved in the tonsilectony and tympanotomy and
post-operative care in Ingham Circuit Court alleging various
acts and omissions of malpractice against the defendants. Prior
to trial, plaintiffs entered into settlement and release agree-
ments with the two anesthesiologists involved, and two doctors
and Capital Anesthesiologists, P.C. were dismissed from the
suit. Plaintiffs proceeded to trial against Lansing General and
the doctors who performed the tonsilectomy and tympanotomy.
The jury returned a verdict against the hospital only, finding
no cause of action against the two doctors. The jury's verdict,
for $1,000,000, was reduced by the trial court, Thomas L.
Brown, J., to $742,261, adjusting for a setoff for the amounts
plaintiffs received from settlements with the anesthesiologists.
Lansing General appealed. *Held:*

1. Given the inseparable and factually complex proofs offered

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur 2d, Master and Servant §§ 219, 408, 453.
 Release of, or convenant not to sue, one primarily liable for tort,
  but expressly reserving rights against one secondarily liable, as
  bar to recovery against latter. 24 ALR4th 547.
[2] 40 Am Jur 2d, Hospitals and Asylums §§ 42-44.
[3] 20 Am Jur 2d, Counterclaim, Recoupment, and Setoff §§ 157, 158.
[4] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
 20 Am Jur 2d, Costs §§ 92, 94.

at trial and the availability of special verdicts, the trial court did not err in allowing plaintiffs to introduce evidence regarding the acts of the anesthesiologists even though they had been dismissed from the action by virtue of their settlements with plaintiffs.

2. Defendant's other assertions of error as to the jury's verdict have not been preserved for appellate review. Since no manifest injustice will result in the absence of review, those assertions of error will not be addressed.

3. The trial court correctly computed the amount of the setoff to be applied against the $1,000,000 jury verdict.

4. Defendant's failure timely to object to plaintiffs' taxed bill of costs waived its right to object at a later time. The trial court did not err in refusing to set aside the taxed bill of costs and in refusing to allow defendant to present its objections.

Affirmed.

1. Negligence — Master and Servant — *Respondeat Superior* — Joint Tortfeasors.

A master or principal who does not actively participate in the negligent conduct of his servant or agent and whose liability is based solely on the doctrine of *respondeat superior* is not technically a joint tortfeasor with his servant or agent, and a valid release of either operates to release the other; however, where the master or principal engages in some independent or concurrent act of negligence, or the master and servant are joint tortfeasors, a release of the servant will not operate to release the master from liability for his or her independent or concurrent negligent acts.

2. Negligence — Wrongful Death — Evidence — Settlements.

Evidence as to the acts or omissions of anesthesiologists who entered into settlement agreements and were released from a wrongful death suit was properly admitted for the purpose of proving independent acts of negligence on the part of the hospital involved where the hospital did not request the use of special verdicts to avoid a jury verdict against it based on the negligence of the anesthesiologists and where striking the references at trial to the acts or omissions of the anesthesiologists would have confused the jury with an incomplete presentation of the events leading up to the decedent's death.

3. Negligence — Wrongful Death — Jury Verdicts — Settlements — Setoffs.

A jury verdict against one defendant in a wrongful death action is properly set off by the amount of actual dollars paid by other

defendants liable for the same wrongful death who enter into settlement agreements and are released from the action (MCL 600.2925d[b]; MSA 27A.2925[4][b]).

4. TRIAL — BILL OF COSTS — PRESERVING QUESTION — WAIVER — COURT RULES.
   Failure to object to a taxed bill of costs prior to its entry waives the right to challenge the costs at a later time (GCR 1963, 526.10[3]).

*Farhat, Story, Panek, Tyler & Kraus, P.C.* (by *Richard C. Kraus);* and *Church, Wyble, Kritselis, Anderson & Robinson, P.C.* (by *William N. Kritselis),* for plaintiffs.

*Kitch, Suhrheinrich, Saurbier & Drutchas, P.C.* (by *Paul L. Kaliszewski),* for defendant.

Before: CYNAR, P.J., and M. J. KELLY and R. L. EVANS,* JJ.

M. J. KELLY, J. Defendant Lansing General Hospital appeals as of right from a $1,000,000 jury verdict in favor of plaintiffs. We affirm.

Gene Christopher Schneider was admitted to Lansing General Hospital at the age of seven years for the performance of a tonsilectomy and a bilateral tympanotomy. The surgery occurred on June 16, 1978. Anesthetization was performed by Jana Palmer, a certified registered nurse anesthetist, and Dr. Jack Gilmore, anesthesiologist, both of whom were employed by Capital Anesthesiologist, P.C. Dr. Gerald Gilroy performed the bilateral tympanotomy and Dr. David Schiamanna was the decedent's pediatrician during post-operative care.

During the bilateral tympanotomy, decedent suffered a cardiac arrest and only after extensive resuscitative efforts did his heartbeat and breath-

---

* Recorder's court judge, sitting on the Court of Appeals by assignment.

ing return. The decedent was taken from the operating room to the intensive care unit where he remained unconscious, experiencing a second cardiac arrest on June 17, 1978. Decedent was maintained on a respirator over the next six days, but his condition continued to deteriorate. On June 22, 1978, an electroencephalogram revealed no brain wave activity and he was taken off the respirator. The pathologist diagonosed anesthetic death.

Plaintiffs commenced this wrongful death action in the Ingham County Circuit Court alleging various acts and omissions of malpractice against the hospital and the medical personnel involved. Of particular relevance to this appeal are plaintiff's charges of negligence against Dr. Gilmore and Nurse Palmer for (1) anesthetic overdose, (2) inadequate monitoring, particularly failure to have an anesthesiologist present in the operating room at all times and failure to use a precordial stethescope, and (3) failure to employ certain standard resuscitative techniques. Plaintiffs' charges against the hospital included (1) failure to establish and enforce adequate standards for the administration of anesthesia in its operating rooms, (2) failure to establish adequate emergency protocol, (3) failure to advise the decedent's parents that a nurse anesthetist rather than an anesthesiologist would be present throughout the surgery, and (4) failure to establish and enforce adequate standards for intensive care treatment.

Prior to trial, plaintiffs entered into settlement and release agreements with Nurse Palmer and Dr. Gilmore. Drs. Mahoney and Wirt and Capital Anesthesiologists, P.C. were dismissed on grounds not relevant to this appeal. Plaintiffs proceeded to trial in April of 1983 against the hospital and Drs. Gilroy and Schiamanna. The jury returned its verdict against the hospital only, finding no cause

of action against the two physicians. On June 2, 1983, by an order of judgment on the verdict, the trial court reduced the amount of the jury verdict to $742,261, adjusting for the setoff in the amount plaintiffs had received from settlements with Palmer and Gilmore.

On appeal, defendant first argues that the jury was improperly allowed to consider the negligent acts of Nurse Palmer in determining the hospital's liability for Gene Christopher Schneider's death. Defendant raised this issue below by way of a motion to strike allegations from the complaint rather than by way of a motion for accelerated judgment and/or by way of a motion *in limine* as to evidence of Palmer's acts. At the conclusion of the hearing on defendant's motion, the trial court ruled:

"The case law seems to indicate that's the situation, but it seems to me great pains were taken in this particular instance to attempt to avoid the obvious effect of the law, so it's difficult to fault the plaintiffs when they took care to avoid the pitfalls, by their actions, in preparing this release and the petition in court here, so I think that my first suggestion is the one that I prefer to adopt, proceed to trial and then let the Court determine whether or not, from the facts, there is, in fact, any independent acts of negligence on the part of the other defendants that will put them in the category of a joint tortfeasor, as opposed to a master-servant, and if there are, that we submit that to the jury on a separate and special verdict that they find specifically regarding these defendants as they apply to the acts, or lack of acts, on the part of Jana Palmer. Okay."

Defendant now appeals from this ruling.

Defendant correctly argues that where a master or principal does not actively participate in the negligent conduct of the servant or agent, and the

master or principal's liability is based solely on the doctrine of *respondeat superior,* the master or principal and servant or agent are not joint tortfeasors, *Geib v Slater,* 320 Mich 316, 321; 31 NW2d 65 (1948), *overruled on other grounds* in *Moore v Palmer,* 350 Mich 363, 394; 86 NW2d 585, 597 (1957); *Willis v Total Health Care of Detroit,* 125 Mich App 612, 617; 337 NW2d 20 (1983), and a valid release of either operates to release the other. *Drinkard v William J Pulte, Inc,* 48 Mich App 67, 76-78; 210 NW2d 137 (1973); *Ravenis v Detroit General Hospital,* 63 Mich App 79, 84; 234 NW2d 411 (1975), *lv den* 395 Mich 824 (1976); *Willis v Total Health Care, supra.* It is also true, however, that where the master or principal engages in some independent or concurrent act of negligence, or the master and servant are joint tortfeasors, a release of the servant will not operate to release the master from liability for his or her independent or concurrent negligent acts. *Witucke v Presque Isle Bank,* 68 Mich App 599, 610-611; 243 NW2d 907 (1976), *lv den* 397 Mich 842 (1976); *Drinkard v William J Pulte, Inc, supra; Willis v Total Health Care, supra.*

The trial court in this case properly determined that the release of Nurse Palmer and Dr. Gilmore released the hospital from any liability based on a theory of *respondeat superior.* The court also properly determined that the language of the two releases did not protect the hospital from liability for its independent and concurrent acts of negligence. The critical issue here, however, and one not addressed in the cases cited *supra,* is an evidentiary one. Defendant argues that the trial court should have barred the introduction of any evidence regarding the acts of Nurse Palmer and Dr. Gilmore. The trial court disagreed on the ground that striking all reference at trial to the acts and/

or omissions of Nurse Palmer and Dr. Gilmore
would confuse the jury with an incomplete presen-
tation of the events leading up to the decedent's
death. The trial court thus admitted the evidence
for the purpose of proving independent acts of
negligence on the part of the hospital. The trial
court opined that a jury verdict against the hospi-
tal based on the negligence of Nurse Palmer or Dr.
Gilmore could be avoided by use of special ver-
dicts. The defendant, however, rejected the court's
recommendation and did not request the use of
special verdicts at the close of proofs. We are thus
not able to ascertain from the verdict whether any
portion of the $1,000,000 award reflects compensa-
tion for the alleged negligence of Nurse Palmer or
Dr. Gilmore.

We find no abuse of discretion in the trial
court's treatment of the evidentiary implications
of defendant's motion to strike. Plaintiffs claim
that the hospital had engaged in independent acts
of negligence by failing to establish surgical proce-
dures and protocol to provide for the proper ad-
ministration of anesthesia, failure to require the
presence of an anesthesiologist in the operating
room during surgery, and failure to establish pro-
cedures and protocol for coordinating emergency
situations arising during surgery. Under each of
these claims, plaintiffs were required to show not
only the lack of appropriate procedures and proto-
col, but also a causal relationship between the
omission of such hospital policies and the dece-
dent's death. The acts of Nurse Palmer and Dr.
Gilmore are thus critical to the ability of plaintiffs
to prove their independent claims against the
hospital. We note, for example, that it would have
been possible for the jury to determine that Nurse
Palmer, given her limited training, was not negli-
gent in failing to use a precordial stethescope but

that the hospital was negligent for not requiring the use of one. Because of the inseparable and factually complex proofs offered at trial and given the availability of special verdicts, we find that the trial court was correct in allowing plaintiffs to introduce evidence regarding the acts of Nurse Palmer and Dr. Gilmore.

In its brief on appeal, defendant asserts several other errors in an attempt to establish that the jury verdict should be reversed. None of these issues have been preserved for appellate review and because we find that manifest injustice will not result in the absence of review, we decline to consider them here. *Argenta v Shahan,* 135 Mich App 477, 483; 354 NW2d 796 (1984).

Defendant next argues that the trial court improperly computed the amount of the setoff to be applied against the $1,000,000 jury verdict. According to the settlement and release agreements contained in the record, Nurse Palmer had entered into an agreement with the plaintiffs in the amount of $85,000. Dr. Gilmore settled for $172,739, which included the purchase price of annuities obtained for the benefit of plaintiffs. Defendant argues that the amount of the setoff should be based on the settlement's present value to plaintiffs. The trial court, however, computed the amount of setoff based on the actual dollars paid out by or on behalf of Dr. Gilmore for settlement purposes.

MCL 600.2925d(b); MSA 27A.2925(4)(b) provides:

"When a release or a convenant not to sue or not to enforce judgment is given in good faith to 1 of 2 or more persons liable in tort for the same injury or the same wrongful death:

\* \* \*

"(b) It reduces the claim against the other tort-feasors

to the extent of any amount stipulated by the release or the covenant or to the extent of the amount of the consideration paid for it, whichever amount is the greater."

Under the statute, we find that the trial court properly computed the amount of setoff to be applied against the $1,000,000 jury verdict. $172,-739 is "the amount of the consideration paid" by Dr. Gilmore on behalf of the plaintiffs in return for their agreement to release him from any further claims. Defendant's reliance on cases dealing solely with the discounting of damages for future loss are inapplicable.

Finally, defendant argues that the trial court erred in refusing to set aside plaintiffs' taxed bill of costs and in refusing to allow defendant the opportunity to present its objections. Plaintiffs timely filed a bill of costs with the clerk of the circuit court on June 14, 1983. Plaintiffs then served the taxed bill of costs on defendant, accompanied by a notice of hearing scheduled for July 13, 1983. The clerk of the court, however, entered plaintiffs' taxed bill of costs on June 29, 1983. Defendant moved to have the trial court set aside the bill of costs but the trial court denied the motion, holding that defendant had received proper notice from the clerk stating when the bill of costs would be entered. The trial court concluded that defendant's failure to submit its objections prior to entry waived its right to challenge the costs at a later time. We agree.

The question here is whether defendant's reliance on plaintiffs' notice of a hearing scheduled for July 13, 1983, excuses its failure to timely object to the proposed bill of costs. At the hearing on defendant's motion to set aside, plaintiffs' attorney explained that the purpose in scheduling a hearing

for July 13, 1983, was in the event defendant timely objected to the bill of costs. There is no dispute but that defendant failed to timely file its objections under GCR 1963, 526.10(3), thus eliminating the need for the July 13, 1983, hearing. The trial court's decision was correct as a matter of law and we find no equitites compelling a different result. We expect that attorneys will be familiar with the Michigan General Court Rules and we cannot reasonably find that the scheduling of a hearing in anticipation of objections being filed eliminates the opposing party's obligation to object. As the trial court noted, if plaintiffs had failed timely to file their taxed bill of costs, their right to collect costs would have similarly been waived.

Affirmed.